HARRY MATELSKY, Plaintiff, *v.* GLOBE INDEMNITY COMPANY, Defendant.*

Municipal Court of New York, Borough of Manhattan, Ninth District, October 22, 1936.

*Joseph B. Finkelstein,* for the plaintiff.

*Ireland, Cohen & Hendrickson,* for the defendant.

LEWIS (DAVID C.), J.   This lawsuit is a follow-up of a prior action by the plaintiff against Camp Nit-Gedaiget.   This defendant was not a party to that action.   The program of events leading up to this action and the relationship between the participants, and also the nature of the instant cause of action, present initial queries to this court.   A chronological table of the transactions serves an appropriate introduction:

* Revd., 162 Misc. 326.

On May 1, 1928, the defendant issued a general liability policy to Camp Nit-Gedaiget.

The policy contained the following: " No action shall lie against the company to recover upon any claim or for any loss covered under the said policy until the amount of such claim or loss shall have been fixed and rendered certain by judgment against the insured after trial of the issue or unless brought within two years thereafter."

On July 4, 1928, the negligence in the operation of the cab caused personal injury to the plaintiff.

On June 21, 1932, the plaintiff secured a judgment against Camp Nit-Gedaiget, the tort feasor, for the bodily injuries resulting from such negligence.

On March 14, 1935, the plaintiff issued execution on that judgment.

On March 16, 1935, the execution was returned unsatisfied.

On the same day (March 16, 1935), but after the return of the unsatisfied execution, the plaintiff commenced this action against the defendant as the insurance carrier.

The action against Camp Nit-Gedaiget was a pure and simple negligence action. It was a necessary legal preliminary or condition precedent to this action.

The judgment in that action conclusively disposed of the negligence issue, so the only issue in this action is the obligation of this defendant to pay that judgment.

Because this action was not commenced within the two-year period prescribed by the policy, the defendant demands its dismissal.

I cannot adopt the defendant's reasoning. My mind takes a different course and reaches a different conclusion.

Unless the defendant had the authority to bind the plaintiff to that shorter policy Statute of Limitations, this plea need not worry us.

On this question the relationship between the plaintiff and this defendant and the nature of the cause of action must be considered. For generally speaking only one who is privy to a stipulation or the successor or representative of such a party or one who takes subject to such private stipulation, is bound by it.

The insured and the insurer are named parties to the contract of insurance. Between them the policy is a contract of indemnity restricted and regulated by the valid terms of their agreement. To the insured this policy is like a charter of rights.

But the status of the plaintiff is entirely different. He is not a named party to the contract; though he inherits the benefit of it,

for the Insurance Law makes him a quasi contingent beneficiary of the insurance, and grants him a certain right to the protection and enforcement of the policy. In fact, the defendant does not totally deny the right of the plaintiff to enforce the indemnity. It simply insists that the plaintiff can only proceed against the defendant on the theory of subrogation; and that, therefore, his claim is subject to all the limitations of the policy that are binding on the insured, including, of course, the special private Statute of Limitations.

The defendant seeks the strict application of the principles of subrogation. I do not think that the words of the statute, " an action may be maintained  *  *  *  against [the insurer]  *  *  * *under the terms of the policy* " (italics mine) make *every term* to which the insurer and insured agreed, absolutely binding on the unknown injured.

It is one thing to hold that the statute (Insurance Law, § 109) was never intended to put the insurer at the mercy of an unprincipled and insolvent insured. It is another thing to hold that it puts the rights of the insurer above the rights of the injured.

Our courts have not hesitated to support terms of the policy requiring prompt notice and due co-operation, for these provisions constitute valid conditions precedent and afford the insurer due and legitimate protection. If an insurer is advised of an accident and receives the co-operation of its insured, it can settle, if it sees fit, or await the verdict of a court of last resort if it so prefers. However, to insist that the insurer may bar the right of the injured party to recover notwithstanding the full and proper co-operation of the insured; and after the cause of action has completely accrued, solely by reason of its private stipulation in the policy, conflicts with the law of our State and our sense of equity.

To honor this private Statute of Limitations would not only shorten the time of the injured to sue but of the insurer to settle — quite a novel feature in itself.

This statute was born of a desire to preserve the right of the injured to recover against the insurer. It was intended primarily for the benefit of the injured and not the insured. To my mind, to wed the law to the defendant's construction would result in an incompatible union. Why join justice to such a mate?

In the case at bar we are not concerned with any failure or omission of the insured to carry out his part of the contract.

Nor do I believe that the declaration of our courts that the injured can have no greater rights under the policy than the insured can be stretched to cover this particular provision. (See *Coleman* v. *New Amsterdam Casualty Co.*, 247 N. Y. 271.)

The defendant again misconstrues the plaintiff's status. It overlooks the fact that the plaintiff is not confined exclusively to the policy for authority to enforce the insurance. The defendant is dumb to the wording of the statute.

In one sense this obligation of the defendant to respond to that judgment depends on the policy. By that I mean that if the defendant had not issued its policy to Camp Nit-Gedaiget, it could not in any event be held obligated for that judgment.

While the policy constitutes the connecting link of liability, it does not originate the liability.

Were the policy completely silent in this respect, the plaintiff would enjoy this right to enforce the insurance under the express provisions of the statute. And the policy should be read and construed in the light of this legislation.

It was for the insured and insurer to determine between themselves whether or not a policy could issue. The issuance of a policy was a matter of private decision. But the terms of a policy and their enforcement is a matter of public law. (See Insurance Law, § 109.)

The policy must conform to the statute. It cannot contradict it. The Insurance Law impinges the obligation of the insurer to the injured into the contract. This obligation is statutory and mandatory. The policy could neither ignore nor repeal the statutory liability.

This time limit provision stubs its toe against section 48 of the Civil Practice Act.

To sustain this private Statute of Limitations against this plaintiff would work a forfeiture of his right to a recovery and open the door to unpublished and unknown private stipulations resembling conditional limitations. Such a practice would thwart the spirit and purpose of the Insurance Law and usurp the power of the Legislature.

The insurance statute which provided this right does not mention subrogation. It does not restrict the injured to the indemnity rights of the insured. It makes the insurance subject to the claims of the injured. It does not make the injured subject to the limitations of the insured.

The insurance statutes are designed to provide a standard protection. We share the wholesome desire for uniformity. We cannot afford to flirt with any provision in the policy conflicting with this purpose. The present day human casualties plead convincingly against any unnecessary meddling with the meagre statutory protection. Particularly is this so when we are dealing

with an innocent party totally ignorant of the existence of any insurance, to say nothing of its special private provisions.

Unless the law allows the insurance company to abridge the remedies of the injured, how can the court sanction this proposal? Public interest is superior to private advantage. Guided by this thought I would at least safeguard whatever protection the law gives to the injured against unnecessary impairment.

The policy itself forbids identical treatment of the plaintiff and the assured. The policy gives indemnity to the assured. The policy guarantees payment to the injured.

The plaintiff had a right to institute this action under the policy as well as under the law.

The insured could not maintain this action.

The specimen copy of the policy confirms the independent conclusions of this court, for I find paragraph " I " of the insurance agreements treats this very topic: " If any condition of this policy relating to the limitation of time for notice of accident for any legal proceeding is at a variance with any specific statutory provision in the State in which the accident occurs, such specific statutory provision shall be substituted for such condition."

These provisions apparently escaped notice and up to this time have been overlooked. Unindexed, one has to read everything to sight them. That task is not so inviting. Evidently the author of the policy recognized the same principles of law and public policy that this court would respect. A judicial construction of the policy in such accord with the expressed thought of the draftsman is more than likely to be a trite translation of the intent of the parties.

This interpretation also respects the law of our State and the rights of all the parties. That courts in other jurisdictions have in passing upon a similar but not identical question taken a different slant, is interesting but not conclusive. (*Bass* v. *Standard Acc. Ins. Co. of Detroit, Mich.*, 70 F. [2d] 86; *Watson* v. *Royal Indemnity Co.*, 56 id. 409; *Bachman* v. *Independence Indemnity*, 112 Cal. App. 465; 207 Pac. 110.)

In this connection the words of a respected authority command attention: " A main supposed virtue of ' stare decisis ' is the blessing of certainty in the law. Yet that blessing has obviously not descended upon us. And an important reason for this failure is the hodge-podge use by one State court of the decisions of other State courts. Except in four or five States, the opinions are full of citations from other States. Those other States' decisions are not binding as precedents; their use tends to unsettle the law of the

court that resorts to them." (1 Wigmore Evidence [2d ed.], p. 117 [8A-4], bottom of page.)

This lawsuit suggests that there should be provision for a public record of motor vehicle liability insurance. A public record would supply valuable information. An injured party could readily ascertain that there was insurance. He could promptly notify the insurance company of an accident. Thus we would pave the way to avoid forfeiture for default on the part of the injured and permit prompt investigation on the part of the insurer.

Judgment for plaintiff. Ten days' stay.