Edward T. Sullivan, J.
Summons, verified complaint, verified answer, and demand for bill of particulars have been served in the above. After the latter, plaintiff brings this motion for summary judgment on notice, affidavit of John F. Welgan, president of plaintiff corporation, and upon the aforesaid pleadings which were submitted to the court. Defendant served and filed an answering affidavit by Warren J. Broderick, counsel for the defendant.
By its complaint, plaintiff seeks to recover for property damage to a motor vehicle owned by it under collision insurance coverage contained in Part III of “ Family Automobile Policy ” No. 6286193 issued for a consideration by defendant to one Evelyn F. Bohner covering a certain automobile owned by her on and prior to July 6,1964. Plaintiff brings this action directly against the collision insurance carrier in the first instance based upon the following undisputed facts.
Defendant, a District of Columbia corporation, is authorized to conduct insurance business in New York State; and prior to *818 July 6, 1964 it issued a policy as aforesaid. One Donald W. Bohner, husband of and resident of the same household with the insured policy owner, Evelyn F. Bohner, was also an insured under the terms and definitions in said ‘1 Family Automobile Policy” which was in full force and effect on July 6, 1964. Plaintiff, by its complaint, and defendant, by its answer, each attached a specimen copy of said policy to its pleading and made it a part of their respective pleadings. Special Term was furnished a photocopy of the specimen copy of the policy.
On or about July 6, 1964 said Donald W. Bohner, with the permission of plaintiff, took a 1963 automobile owned by plaintiff for a demonstration or trial drive preliminary to a possible sale of the vehicle by plaintiff to Bohner or his wife. While on the trial drive, Donald W. Bohner operating, plaintiff’s 1963 Oldsmobile automobile was damaged in a collision in Saratoga County with another automobile.
In its answer defendant alleges certain denials with partial admissions and then alleges a separate affirmative defense. The partial admissions result in the uncontroverted facts stated herein. Defendant unequivocally denies that the damaged vehicle was reasonably worth $4,000 and that plaintiff was damaged in the sum of $4,000. Thus, by the denials, the answer puts in issue only the material question of damages. By CPLB 3212 (subd. [c]), “ The existence of a triable issue of fact as to the amount or the extent of the damages shall not bar the granting of summary judgment and it is unnecessary to consider further the denials alleged in the answer for a determination of this motion.
Also, it is undisputed herein by the denial of one of plaintiff’s allegations, coupling said denial with a partial admission of the allegation, and by an affirmative allegation in the separate defense pleaded by the defendant that defendant contracted to pay collision damages on a nonowned automobile, operated by the assured, subject to all the terms, conditions, restrictions, and exclusions of said policy.
Turning now to the affirmative defense alleged in the answer, the defendant in substance thereby contends that its responsibility to a party in the legal position of the plaintiff is specifically excluded in its insurance contract No. 6286193 for the reason that plaintiff admittedly is ‘ ‘ engaged in the automobile business.” Defendant disclaimed on the policy. The answer, defendant’s answering affidavit, oral argument in defense of the motion, and the memorandum of applicable law submitted by the defendant all rely and depend upon the validity of the ‘ ‘ engaged in the automobile business” exclusion. Defendant *819 contends, therefore, that there is no coverage afforded plaintiff in this action. By its memorandum, defendant further asserts that under condition 8 no action lies against the defendant insurance company.
Plaintiff contends, (1) that by the disclaimer defendant waived the applicable terms of condition 6 under which defendant could take the position that it was not subject to suit on the policy; and (2) that the “ engaged in the automobile business ” exclusion is not a valid defense herein to a suit on the collision policy.
Since the material and substantial factual events are not in dispute, the insuring instrument has been submitted by both parties to the court, and the legal differences of the parties are concerned with the interpretation and application of certain exclusions and conditions contained therein, Special Term holds that these are mixed questions of law and facts which it has authority to decide and under which, pursuant to the last sentence of CPLR 3212 (subd. [b]), the court may grant summary judgment to either party.
The instrument in question is printed and has seven divisions. Unnumbered divisions are the initial agreeing statement, and at the end two divisions, one labeled “ conditions ” and a final division labeled “exceptions.” The other four divisions are identified as follows: ‘ ‘ part i — liability ; part n — expenses FOR MEDICAL SERVICES ; PART III-PHYSICAL DAMAGES; and PART IV — protection against uninsured motorists. ’ ’ The initial agreeing sentence applies to the insuring parts stated in the declaration and for which as consideration the respective premium or premiums are paid or agreed to be paid by the insured. Plaintiff makes part iii which includes “ coverage e — collision : ” an essential to the determination of this motion. Defendant makes part i which includes “ coverage a — bodily injury liability: ” and “coverage b — property damage liability: ” and “ condition 6 ” essentials to the determination of this motion. The other divisions are not pertinent. Bach of the four numbered parts of the instrument is subparagraphed and subtitled. The following subparagraphs and subtitles are set forth separately in each of the four numbered parts : ‘1 coverage ”, “ definitions ’ ’, and ‘ ‘ exclusions ’ \ Where the draftsmen of this instrument sought to save space or avoid repetition, definitions and exclusions when common to all four Parts are incorporated from one to another by expressed reference and identification. Where separate, distinct and different definitions and exclusions are pertinent to one part only, these are specifically expressed within that particular physical part *820 of the instrument. An analysis of the insuring instrument indicates that the draftsmen intended and have produced four separate and independent insuring agreements. In fact, the effect and end result is that for convenience, mainly for the insurer, four independent policies are written under one cover. The policies are interdependent or interrelated only when a term of one is incorporated in another of the policies by express specific reference. An automobile owner could purchase the collision policy (part hi) only, and receive an insuring instrument identical with the specimen copy herein; or he could purchase the liability policy (part i) only and receive the same printed form. The declarations in his application and the premium payment agreement would control.
If the format of or the phraseology in the instrument as a whole gives rise to doubt or raises questions as to the validity of this conclusion, it must nevertheless be resolved against the defendant insurer’s contention under well-established rules of construction. To sustain an interpretation or construction urged by an insurer, the insurer has the burden of showing that the instrument is susceptible of that construction, and that it is the only one which can fairly be placed thereon. Any ambiguity will be strictly construed against the insurer since the insurer drafted the instrument and selected the format and phrases used. (Sincoff v. Liberty Mut. Fire Ins. Co., 11 N Y 2d 386, and cases cited therein.)
Liability insurance, part i, and collision insurance, part hi— coverage e are distinctly different types of insurance. That insurers and legislators recognize and admit the difference is evident in the first instance by the difference in the names given these insurances. They are different also in the risks against which they insure and the purposes a policyholder has in purchasing them.
Automobile liability insurance protects the insured, or one standing in his place, for injuries and property damage to others resulting from the tortious, wrongful, usually negligent, operation of the insured’s motor vehicle. It provides compensation to the outsider, the stranger to the operation and ownership of the insured vehicle only when the insured by reason of his acts or failure to act is legally responsible for the loss incurred by the other. It does not compensate the insured or his operator for their personal losses, neither personal injury nor property damage, arising from the operation of the motor vehicle owned by the policyholder.
Automobile collision insurance is a contractual agreement between an insured and an insurer. It is direct insurance. It *821 protects against the personal financial losses of the insured owner of the motor vehicle, or of a person who, under the terms of the insurance agreement stands in his place and is granted coverage. Under collision insurance, the only loss compensated is the property damage to the motor vehicle owned or operated by the insured or operated by one standing in his place by extension of coverage under the terms of the collision insurance contract. The establishment of legal responsibility in tort is not a factor.
Plaintiff, the movant herein, brings action on the collision policy or coverage of the insuring instrument. The contention of defendant that the statutory provisions of section 167 of the Insurance Law of the State of New York (derived from former Insurance Law, § 109) control cannot be sustained. These statutory provisions apply only to liability policies or coverage and do not control collision insurance situations. Matelsky v. Globe Ins. Co. (161 Misc. 163, revd. 162 Misc. 326) cited by defendant is a ruling on liability coverage only and does not control.
Further, since they are different insurances with different purposes and different risks, sometimes there are different definitions for the same word when it is used in both a liability coverage policy and a collision insurance policy. Also, exclusions are phrased and worded differently from one coverage to another. In the liability policy, part i, the “ engaged in automobile business ” exclusion on which defendant relies is worded as follows:
“exclusions: This policy does not apply under Part I: * * *
“ (h) to a non-owned automobile while maintained or used by any person while such person is employed or otherwise engaged in (1) the automobile business of the insured or of any other person or organisation [emphasis supplied by court], (2) any other business or occupation of the insured ”.
In the collision policy, part hi, the ‘ ‘ engaged in automobile business ” exclusion is worded as follows:
“exclusions: This policy does not apply under Part III: * * #
“ (c) to loss to a non-owned automobile arising out of its use by the insured while he is employed or otherwise engaged in the automobile business.” [Emphasis supplied by court.]
While defendant would have a valid defense under this exclusion in a liability action against it since this exclusion would be extended to the plaintiff as one “ engaged in (1) the automobile business * * * of any other person or organization ”, it *822 has no such valid defense under the comparable exclusion in an action under the collision policy or coverage since this exclusion thereunder is limited to the factual situations where the loss to a nonowned automobile arises out of its “ use by the insured while he is employed or otherwise engaged in the automobile business.” The motive and purpose of the insurer for this difference is apparent in the unlimited possibilities of unlimited financial losses under the liability exposure while the exposure under the collision policy or coverage is limited to the value of the owned automobile named in the declaration. In the liability exposure, the risk is all out of proportion to the premium payment for liability coverage on insured’s motor vehicle.
In the collision exposure, the upper limit of the risk is fixed and the premium payment, actuarially based on this maximum exposure is commensurate with the risk. In the instant lawsuit brought under the collision policy, the insured is not “ employed or otherwise engaged in the automobile business ”; and, therefore, the loss to the nonowned automobile is not excluded from coverage, even though the plaintiff owner is so engaged.
Neither counsel for the parties nor the court found a New York decision on this point. Defendant cites one Florida case, Hodapp v. Shelby Mut. Ins. Co. (166 So. 2d 772 [Fla.]) in support of his contention. In a declaratory judgment brought by the insured, the court held there was no coverage under the policy therein for damages arising on a demonstration drive by assured of a car held for sale by a used car dealer since loss to a nonowned automobile is excluded under the policy in that litigation ‘ ‘ to any automobile while used in the automobile business ’ ’; and that the nonowned automobile therein on a demonstration drive is being “ used in the automobile business ’ ’. It was also held that coverage was excluded under that policy since the insured was “ exercising physical control of the automobile ” which was another specific exclusion. The phrasing in the Florida case (p. 773) policy excluding “ [loss] to a non-owned private passenger automobile while used in the automobile business ’ ’ is clearly distinguishable from the exclusion herein stated above; and the Florida decision does not sustain defendant’s contention, in the opinion of Special Term.
Plaintiff cited Caster v. Motors Ins. Corp. (28 Ill. App. 2d 363) in support of its position. The Illinois court held that collision policy exclusion with respect to any accident arising out of operation of automobile sales agency did not apply to accident occurring when insured was driving (plaintiff) dealer’s automobile; tha[ jf ¡applied only if insured was engaged in *823 operation of automobile sales agency, repair shop, service station, storage garage or public parking place. The rationale of the Illinois decision gives more support to the principle relied upon by plaintiff herein. In the Illinois case, as in the litigation here which is the subject of this motion, the wording of the exclusion directs it against the occupation of the insured. The Illinois court points out that if the insured is engaged in any of those automobile businesses, he must purchase a different type of insurance or insure himself against loss for damage which would occur to automobiles of his customers while he or one of his agents is operating the customer’s car.
The insuring instrument under “ conditions ” contains these statements: “ Conditions 1, 2, 3, 6,14,15, 16,18 and 19 apply to all Parts [emphasis supplied]. Conditions 4, 5, 7 through 13, and 17 apply only to the Parts noted thereunder [emphasis supplied] ”. Defendant relies on Condition 6 and contends an action against the defendant insurer will not lie unless insured complies with “ all terms ” of the policy and the amount of insured’s obligation to pay is determined by first obtaining a judgment against the insured. Again, by the wording of Condition 6 in the policy, this is the substance of the condition for a suit directly against the insurer under part i — Liability. It is reasonable and purposeful to have such a requirement in litigation under liability coverage where the financial obligation of the insurer to damaged third parties arises only when the legal responsibility therefor has been placed upon the insured.
The last paragraph of Condition 6 is as follows: ‘ ‘ Parts II, III, and IV: No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all terms of this policy nor, under Part III (collision coverage) until thirty days after proof of loss is filed and the amount of loss is determined as provided in this policy.” The above paragraph quoted verbatim from the insuring instrument does not expressly require a judgment against the insured as a condition precedent to an action directly against the insuring company. The disclaimer by defendant waives the requirements of such conditions precedent to a lawsuit against an insuring company in any event. Otherwise an insurer could avoid all its contractual obligations and bar a lawsuit on the policy by such disclaimer. There is no such restriction stated in part hi, coverage s: the collision policy.
Again, if the words “ subject to ” or “ in compliance with all the terms of this policy” raise doubts as to the true meaning and intent, as illustrated by the defense asserted by defendant herein, the problem of interpretation or construction arises. It *824 is a well-settled principle of construction in this State that the exclusion clauses in a policy will he strictly construed against the insurer. (Silverstein v. Commercial Cas. Ins. Co., 237 N. Y. 391.) Ambiguity is resolved in favor of the insured. (Fidelity & Cas. Co. of N. Y. v. Groth, 296 N. Y. 788 ; Janneck v. Metropolitan Life Ins. Co., 162 N. Y. 574, 576-578.) An exclusory provision of a policy must be drawn in such clear and unmistakable words and phrases that no one could be misled. The rule has special application where exclusions are involved. (Shneiderman v. Metropolitan Cas. Co. of N. Y., 14 A D 2d 284, 289; Matsuo Yoshida v. Liberty Mut. Ins. Co., 240 F. 2d 824, 826; Mohawk, Val. Fuel Co. v. Home Ind. Co., 8 Misc 2d 445; Sperling v. Great Amer. Ind. Co., 7 N Y 2d 442; Birnbaum v. Jamestown Mut. Ins. Co., 298 N. Y. 305, 313.) To sustain the construction urged by the insuring company, the insurer must prove that the words and expressions used not only are susceptible of the construction so urged by the insurer, but that it is the only construction that can be fairly placed thereon (Hartol Prods. Corp. v. Prudential Ins. Co. of America, 290 N. Y. 44, 50; Bronx Sav. Bank v. Weigandt, 1 N Y 2d 545, 551; Piliero v. Allstate Ins. Co., 12 A D 2d 130, 134; D’Agostino Excavators v. Globe Ind. Co., 7 A D 2d 483, 485; Cohen v. Jacoby, 27 Misc 2d 396; Sincoff v. Liberty Mut. Fire Ins. Co., 11 N Y 2d 386). Herein, the insurer’s instrument could have simply and clearly stated that a judgment against insured was an essential condition precedent for an action to lie against the insurer on the collision policy if that was actually the condition it intended. Special Term holds that there is no contractual bar to plaintiff’s cause of action either by way of exclusion or by way of the policy conditions.
Special Term is also of the opinion and so holds that there is no legal bar to plaintiff’s action. While no ease on the exact point has been cited or found, in similar insurance coverages such as fire, marine and burglary, actions by third-party owners of property in possession of or being used by the insured have long been litigated. These are mainly mercantile situations but the principle is the same. In these cases the third party suffering loss to his property can elect to sue either the insured or the company. (Exton & Co. v. Home Fire & Marine Ins. Co., 249 N. Y. 258; Stillwell v. Staples, 19 N. Y. 401; Waring v. Indemnity Fire Ins. Co., 45 N. Y. 606, 610, 612; Lewis v. Home Ins. Co., 199 App. Div. 556, affd. without opn., 234 N. Y. 498; Utica Canning Co. v. Home Ins. Co., 132 App. Div. 420, and others cited in the above.) In Stillwell (p. 403) quoted in Exton, the court said: “ The words ‘in trust ’ may, with entire propriety, be applied to any case of bailment, where goods *825 belonging to one person are entrusted to the custody or care of another, and for which the bailee is responsible to the owner.” It should be permitted for losses under automobile collision policies and coverages. No useful purpose is served by a procedure requiring two lawsuits involving the same subject matter of litigation. If plaintiff can prove his case against insured, he can also against insurer. If insured can successfully defend, so can an insurer. In fact, the insurer is less prejudiced and in less jeopardy where it is in direct control of the litigation, and where it has the ultimate and only financial interest. Further, to bar the direct action by a third party sustaining the loss would make for a duplicity of actions and a meaningless circuity of litigation. Also, it would work against the avowed purpose of revising the practice and procedure in this State in adopting the CPLR, the goal of which has been stated to be precision, consistency, simplicity, conciseness and brevity; and would be in opposition to the efforts of the Bar, Bench, Judicial Conference and the Legislature in their combined efforts to clear overburdened court calendars.
It is the opinion and holding of Special Term that the affirmative defense pleaded in the answer shall be struck and the motion by plaintiff for summary judgment be in all respects granted, with $20 costs and interest from July 6, 1964. Submit order accordingly and settle the term thereof fixing the optional method under CPLB 3212 (subd. [c]) selected to determine the assessment of damages.