LOEBER MOTORS, INC., Plaintiff-Appellee, *v.* WILLIAM E. SIMS *et al.*, Defendants-Appellants.

(No. 61435;

First District (1st Division)—November 17, 1975.

SIMON, J., concurring in part and dissenting in part.

W. R. Tribler and Pretzel, Stouffer, Nolan & Rooney Chtd., both of Chicago (Joseph B. Lederleitner, of counsel), for appellant Country Mutual Insurance Co.

Stephen Novack, of Levy and Erens, of Chicago, for appellee.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

Country Mutual Insurance Company (defendant) has appealed from judgments in the circuit court granting Loeber Motors, Inc. (plaintiff) summary judgment against it and also from a subsequent judgment entered against it upon a jury verdict in favor of plaintiff for $6500. As will more fully appear, the appeal also involves a judgment entered against Country Mutual in favor of a counterclaimant, Robert Rogers (Rogers), pertaining to policy coverage and also a money judgment for $5500 entered against Country Mutual in favor of plaintiff pursuant to an assignment by Rogers to plaintiff. Thus, this appeal involves two summary judgments and two money judgments against Country Mutual.

The factual background of the litigation is virtually undisputed. Plaintiff, in the automobile business in Cook County, owned a Mercedes Benz automobile. Plaintiff gave possession of the car to William E. Sims, a prospective purchaser, for a test drive. There are allegations in the pleadings that Sims agreed to insure the car for the trial period, but he did not do so. Sims requested that Rogers drive the automobile to give him an opinion of its performance.

While Rogers was driving and Sims was a passenger, Rogers found it necessary to make a sharp application of the brakes. The car came into forcible contact with a bank on the left side of the road. It turned over and was badly damaged. This occurred on August 2, 1970. At all times pertinent hereto, Rogers was the named insured in an automobile policy issued by Country Mutual.

The intricate problems presented by this record result from the complicated and sophisticated legal actions taken by the parties after the occurrence as follows:

Plaintiff filed a second amended complaint. Count I claimed judgment against Sims and two other defendants subsequently dismissed from the cause. This was based upon the alleged failure of Sims to obtain collision insurance for his test drive. Count II claimed recovery from Sims, and from Rogers as his agent, for property damage on the theory of negligent driving by Rogers. Count III alleged that Country Mutual had denied coverage in violation of an agreement by Rogers to provide collision insurance for Sims. Count VI prayed judgment against Country Mutual for denial of collision coverage to plaintiff and for attorney's fees, for vexatious refusal to pay the loss. Ill. Rev. Stat. 1973, ch. 73, par. 767.

The answer of Country Mutual raised an affirmative defense, that the public policy of Illinois prohibited direct action by a claimant against the insurer of an alleged tortfeasor.

Rogers filed a counterclaim against Country Mutual seeking a declaratory judgment requiring it to extend coverage to him under section IV

of his policy. Rogers prayed for allowance of costs and attorney's fees. The answer of Country Mutual to this counterclaim denied liability under the policy. It relied upon an exclusion of vehicles used by the insured in an automobile business. In a second count of his counterclaim, Rogers sought recovery against Sims because of the latter's alleged failure to obtain collision insurance covering his operation of the car. Sims filed a counterclaim for indemnity against Rogers based upon active negligence and his own passive conduct.

Various motions for summary judgment were then made. In due course, on January 30, 1974, *nunc pro tunc* as of January 9, 1974, the trial court entered summary judgment as to liability in favor of plaintiff and against Country Mutual on Count IV of the second amended complaint and summary judgment in favor of Rogers on his counterclaim against Country Mutual. The same order denied motions by plaintiff and Rogers that these judgments "include an award of attorney's fees * * *." It was ordered that plaintiff's claim against Country Mutual (based upon Count IV of plaintiff's second amended complaint) "proceed to trial on the issue of damages only." Motions for summary judgment by Country Mutual against plaintiff, by plaintiff against Sims and by Country Mutual against Rogers were all denied.

On July 10, 1974, on plaintiff's motion, the court dismissed without prejudice the actions by plaintiff against Rogers and Sims and the actions by Rogers against Sims and by Sims against Rogers.

On July 16, 1974 plaintiff filed a motion for summary judgment. Country Mutual had continued to refuse coverage to Rogers under his policy. An arrangement was then made by Rogers, Sims and plaintiff, by their attorneys, in which Rogers paid plaintiff $3000 and Sims paid plaintiff $1000. In return each received from plaintiff dismissal of the suit against him without prejudice and a covenant not to sue. Rogers assigned to plaintiff all of his rights against Country Mutual under his policy including the summary judgment declaring his right to coverage against the insurer.

The motion also showed that the attorneys for Rogers had accrued, but not billed, legal fees of $3165 and "upon completion of this matter, will bill Rogers $2500 as their fee * * *." The motion therefore prayed summary judgment for $5500 in favor of plaintiff as assignee of Rogers and against Country Mutual.

In due course, the cause was assigned for trial. The trial judge entered summary judgment on plaintiff's motion in its favor and against Country Mutual for $5500. The order recited that the cause of action against Country Mutual was assigned to plaintiff by Rogers.

The issue of the damages due plaintiff from Country Mutual was then submitted to a jury in accordance with the previous summary judgment in favor of plaintiff on Count IV of the second amended complaint. There was conflicting expert testimony as to the amount of damage done to plaintiff's automobile.

The jury returned a verdict assessing damages of $6500 due plaintiff from Country Mutual. Judgment for plaintiff was entered accordingly. Country Mutual has appealed from the order granting summary judgment (January, 1974) in favor of Rogers, against it, regarding liability and from both of the judgments entered against it in favor of plaintiff as assignee of Rogers for $5500 and in favor of plaintiff for $6500.

What are the rights of these parties? The first step in answering this question is elimination of the deep crust of legal obfuscations presented by this record. We have here plaintiff as owner of an automobile it wished to sell, loaned to a prospective purchaser, driven by a friend of the latter and damaged while the driver had a policy of collision insurance in force and effect. Perhaps answering a few basic questions will present us with a solution of the entire problem.

## I.

### Does The Collision Policy Issued By Country Mutual Afford Coverage To Rogers?

Section IV of the policy issued by Country Mutual to Rogers relates to physical damage. It grants coverage F-1, or a $50 deductible collision insurance. The insurer agreed "To pay for loss caused by collision to a Vehicle as defined herein or to a Non-Owned Vehicle * * *." The term "Non-Owned Vehicle" as defined in section IV of the policy means a private passenger automobile "operated by or in the possession or custody of, but not owned by, registered in the name of, or furnished or available for the regular use of [the named insured] provided the actual use of such vehicle is with the permission of the vehicle owner."

■■ In our opinion, the situation shown by this record comes directly within this definition. In addition, the permissive use of the car by Rogers, the policyholder, seems clear particularly in view of the fact that Sims retained control of the car but merely turned over its physical operation to Rogers while he was a passenger. (See *Hays v. Country Mutual Insurance Co.*, 28 Ill.2d 601, 608, 192, N.E.2d 855.) We reject the argument of Country Mutual that this occurrence did not involve a collision to the vehicle driven by the named insured but only property damage to the vehicle of another person. As defined in section IV of the policy, "collision" includes "upset of such vehicle." In our opinion, the

automobile was a nonowned vehicle damaged by upset. This policy covered the liability, if any, of Rogers to plaintiff for property damage. ■■ Section IV of the policy adopts exclusion 8 under section I and Country Mutual urges strongly that this exclusion is operative here. Exclusion 8 applies to: "a Non-owned Vehicle while used by the Insured in an Automobile Business."

Upon careful examination of this clause, it would seem that the exclusion is not applicable because Rogers was not using a vehicle in an automobile business. The phrase "by the insured" modifies and limits the remaining language, "Automobile Business." This conclusion is supported by authority cited in behalf of Rogers.

In *Caster v. Motors Insurance Corp.*, 28 Ill.App.2d 363, 171 N.E.2d 425, a prospective purchaser took an automobile from a dealer on a test ride. He allowed his friend to drive and the car was damaged. This court held that damage to the automobile was covered by the driver's collision policy. There was an exclusion in the policy applying "'to any accident arising out of the operation of an automobile sales agency, repair shop, service station, storage garage, or public parking place.'" This court held that the interpretation of the exclusion depended upon the occupation of the named insured. In view of the close similarity of the facts in *Caster* to the case at bar, we believe that it is authoritative in determining that the exclusion is not applicable in the case before us.

Country Mutual depends on *Hodapp v. Shelby Mutual Insurance Co.* (Fla.App. 1964), 166 So.2d 772. There, a prospective purchaser took an automobile from a dealer for a test drive. He permitted a friend to drive and the car was damaged. The Florida court held that the vehicle was being used in the automobile business as contemplated in the exclusion to the policy. The rationale of the court was that it should "consider the actual reason why the car was being driven, rather than the particular occupation or intent of the driver." 166 So.2d 772, 773.

Further research shows that this holding by the Florida District Court of Appeal in *Hodapp*, is a minority view. In *State Farm Mutual Automobile Insurance Co. v. Sampson* (M.D. Fla. 1969), 305 F. Supp. 50, the court pointed out that *Hodapp* "is in the minority and clearly against the great weight of authority." (305 F. Supp. 50, 53.) The court then cited a large number of decisions which support the accepted majority view that the policy exclusion would not be applicable. One of these cases is *Helmich v. Northwestern Mutual Insurance Co.* (7th Cir. 1967), 376 F.2d 420, 422.

■■ The remaining authorities relied upon by Country Mutual do not

further its position. *McCree v. Jenning* (1960), 55 Wash.2d 725, 349 P.2d 1071, held a similar exclusion not applicable when the automobile was driven by a repair man. *Murry v. Bankers Fire & Marine Insurance Co.* (La.App. 1967), 198 So.2d 532, did not apply to the collision insurance held by the driver of the automobile but rather to the policy held by the car dealer. Moreover, the principle is accepted that where language in an exclusion is susceptible of two constructions, that meaning will be adopted which is more favorable to the insured. (*Dawe's Laboratories v. Commercial Insurance Co.*, 19 Ill.App.3d 1039, 1049, 313 N.E.2d 218 and cases there cited.) It follows that this policy exclusion does not eliminate coverage. We conclude that Country Mutual was legally obligated to extend policy coverage to Rogers in connection with the loss here involved. The order entered in January, 1974, granting summary judgment in favor of Rogers and against Country Mutual as regards liability on the policy is affirmed.

## II.

### Was Summary Judgment Properly Entered In Favor Of Plaintiff As Assignee?

After the entry of this order, Country Mutual refused to accept its liability under the policy and refused to accept the defense of Rogers in the suit originally instituted by plaintiff. It made no effort to obtain a review on appeal of the order entered in January, 1974, declaring its liability. (Ill. Rev. Stat. 1973, ch. 110A, R. 304.) This refusal persisted. On July 12, 1974, plaintiff, Rogers and Sims joined in a settlement, as above noted, whereby Rogers paid plaintiff $3000 and Sims paid plaintiff $1000 in exchange for covenants by plaintiff not to proceed against them and for their dismissal from the suit. There is no claim or indication in this record that this settlement was unreasonable. The verdict of the jury would seem to indicate that it was, in fact, fair to all parties. There is no claim here of collusion, overreaching or unfairness. In addition, as we will shortly show, one result flowing from the wrongful refusal of an insurance carrier to defend a covered claim against its insured is the liability of the insurer to pay legal expenses including attorney's fees. The record here indicates that the amount of $2500 provided in the settlement for attorney's fees was reasonable and no contention to the contrary has been made.

■■ The law of Illinois is strong and clear in setting forth the serious consequences which result to an insurer for its unjustified refusal to defend a covered claim. This refusal operates as a waiver of performance by the insured of policy conditions and permits the insured to make a

reasonable compromise of his liability and thereafter to recover from the insurer the amount actually expended, including attorney's fees. This doctrine is expounded at length in *Kinnan v. Charles B. Hurst Co.*, 317 Ill. 251, 256-260, 148 N.E. 12. *Kinnan* cites *St. Louis Dressed Beef & Provision Co. v. Maryland Casualty Co.*, 201 U.S. 173, 50 L.Ed. 712, 26 S.Ct. 400, as authority in a situation in which an insured entered into a settlement and recovered the cost thereof from an insurer who had failed to defend. We find *Kinnan* cited to this very point in *Crest v. State Farm Mutual Automobile Insurance Co.*, 20 Ill.App.3d 382, 387, 313 N.E.2d 679, *leave to appeal denied*, 57 Ill.2d 604. Considerations of brevity prevent us from citing each and all of the other Illinois cases which adhere to this principle. The liability of the insurer for payment of fees and expenses in this type of situation was undoubtedly known by Country Mutual. See *Gould v. Country Mutual Casualty Co.*, 37 Ill.App.2d 265, 185 N.E.2d 603.

■■■ By this settlement, the liability of Country Mutual upon its policy became fixed and liquidated. We see no reason why this right which accrued to Rogers as policyholder could not be freely assigned by him to plaintiff. Country Mutual shows no reason which would prevent this. Country Mutual refers to the order for summary judgment entered in January, 1974, in which the court denied attorney's fees. This portion of the order was legally correct. At that point Country Mutual had merely presented to the court the issue of policy coverage which it had the right to do without being guilty of vexatious delay. Attorney's fees were properly assessed against Country Mutual for its subsequent persistent refusal to accept liability. In our opinion, the summary judgment in favor of plaintiff as assignee of Rogers and against Country Mutual in the total amount of $5500 was proper and it is affirmed.

### III.
Are The Summary Judgments In
Favor Of Plaintiff Against
Country Mutual For Liability
And For Additional Damages
Legally Proper?

As shown, the trial court entered summary judgment as to liability in favor of plaintiff and against Country Mutual on Count IV of plaintiff's second amended complaint. The court directed that this count proceed to trial on the issue of damages only. Thereafter the trial judge impaneled a jury and a verdict was returned assessing damages of $6500. Country Mutual objects to these judgments on the theory that the public

policy of Illinois prohibits direct action by a claimant or injured party against the insurer of an alleged tortfeasor and limits them to the usual process of garnishment after inability to collect a judgment against the tortfeasor.

The case most often cited in this regard, and relied upon by Country Mutual, is *Marchlik v. Coronet Insurance Co.*, 40 Ill.2d 327, 239 N.E.2d 799. There, the Supreme Court affirmed an order of the circuit court of Cook County dismissing a suit which resulted from a collision that occurred in Wisconsin. Plaintiff, a resident of Wisconsin, sought to recover for personal injuries from the company which insured the automobile in which she was riding and another company which insured the other vehicle involved in the collision. The Supreme Court noted that both of these policies "contained practically identical 'no action' clauses prohibiting direct action against the carrier until final judgment had been entered against the insured." (40 Ill.2d 327, 329.) These policies were in accordance with the Illinois statute requiring liability and property insurance policies to contain a provision to that effect. (Ill. Rev. Stat. 1973, ch. 73, par. 1000.) The court cited the Wisconsin "Direct Action" statute authorizing original suits against insurance carriers where the injuries are sustained in Wisconsin.

The Supreme Court held that "[a]n examination of Illinois law and customs will, we believe, demonstrate that entertaining direct action suits is contrary to a firmly-fixed public policy." (40 Ill.2d 327, 332.) The court held that this public policy was so strong that it would preclude the use of the courts of Illinois as a forum for cases brought under the Wisconsin direct action statute. (40 Ill.2d 327, 334.) This strongly accepted principle has been consistently followed by this court. In *Sims v. Sneed*, 118 Ill.App.2d 294, 254 N.E.2d 316, this court refused to consider revision of the principle despite the argument that present day circumstances require its modification. The Supreme Court has more recently adhered to this public policy. *Sullivan v. Midlothian Park District*, 51 Ill.2d 274, 282, 281 N.E.2d 659.

■■ Plaintiff has made a valiant attempt to obtain a modification of this doctrine in the case before us. Plaintiff urges that this policy may be rational as regards liability insurance but that it has no application to collision coverage. This argument must be rejected. The statute above cited upon which this policy is based, applies expressly to insurance covering loss or damage to the property of any person other than the insured for which the insured is liable. Also, one of the basic reasons for firm adherence to this policy is to prevent intermingling the issues of liability of an insurance company with the liability of its insured and

with the assessment of damages. Our courts have generally held that existence or lack of insurance coverage is not relevant to the issues of liability or damages and have reversed judgments when the existence of insurance has been brought before the jury. (*Danzico v. Kelly,* 112 Ill. App.2d 14, 250 N.E.2d 801, *leave to appeal denied,* 42 Ill.2d 583.) It is common knowledge that juries are more liberal with the purse strings of insurance companies than they are where private individuals are concerned. This is demonstrated in the case at bar where a jury returned a verdict for damages against an insurance company in the amount of $6500; while the owner of the automobile adjusted the claim with the alleged tortfeasors for total payments of $4000.

Plaintiff also urges that it is a third-party beneficiary of the policy contract between Rogers and the insurer. *Gothberg v. Nemerovski,* 58 Ill. App.2d 372, 208 N.E.2d 12, which plaintiff depends upon in this regard is inapposite here. The case did not involve direct action against an insurance carrier but only against an insurance broker who had agreed to procure liability insurance and then failed so to do. This court held that the injured party, as a third-party beneficiary of the oral agreement between the broker and the alleged tortfeasor for procurement of liability insurance, had a cause of action measured by the amount of his damage resulting from the absence of insurance. Plaintiff also relies upon *Caster v. Motors Insurance Corp.,* 28 Ill.App.2d 363, 171 N.E.2d 425, cited above. It is true that the facts there are quite similar to the case before us. However, the court in *Caster* referred to the case as a complaint for declaratory judgment brought against the insurance carrier, the person who obtained possession of the car from the automobile distributor and the driver who actually caused the damage to the vehicle. The court entered a finding as to the amount due plaintiff. There is no showing as to how this final result was reached.

*John F. Welgan, Inc. v. Government Employees Insurance Co.* (1966), 49 Misc. 2d 816, 268 N.Y.S. 2d 700, is cited by plaintiff as a holding by the courts of New York that the New York insurance law, similar to the Illinois law, permits direct action against insurance companies in issues involving collision coverage. We do not believe that case is in accord with the law of Illinois.

Plaintiff finally cites and relies upon the decision of this court in *Gianinni v. Bluthart,* 132 Ill.App.2d 454, 270 N.E.2d 480. We have never regarded our opinion in *Gianinni* as being in any sense or to any degree contrary to the policy of Illinois as exemplified in *Marchlik.* In *Gianinni,* there was no intermingling of the issues regarding the liability of the insurance carrier and the insured. The claim of John Gianinni was for property damage and that of his wife, Carol, was for personal injuries.

The litigation started as a case in which the two plaintiffs and two alleged tortfeasors were the only parties. The trial court permitted the filing of a third-party complaint by the tortfeasors against an insurance carrier which insured one of them for liability and property damage. The court, however, severed the issues made by the third-party complaint. The balance of the case was then tried resulting in judgments in favor of John and Carol Gianinni against one of the tortfeasors. The court then proceeded to hear the third-party complaint against an insurance carrier which had denied coverage for costs expended by the other (excess) insurance carrier which had provided it. At the same time the cause proceeded by way of garnishment proceedings brought by plaintiff against the carrier which had refused coverage. This court held that permitting recovery of both judgments and of costs and expenses against the carrier which had wrongfully refused coverage was proper and not contrary to the strong public policy forbidding direct action by an injured party against the insurance carrier of the tortfeasor. By contrast, in the case before us we have the forbidden situation of a jury assessing damages against an insurer in a direct action by the damaged party.

■■■ A policy of insurance is a contract like any other prepared for any purpose. (22 Ill. L. & Pr. *Insurance* § 101 (1956).) The insurer agrees to indemnify the policyholder. (*Fidelity General Insurance Co. v. Nelsen Steel & Wire Co.*, 132 Ill.App.2d 635, 270 N.E.2d 616.) The injured or damaged party has no contractual relationship with the insurer and has no rights under the policy until and after judgment has been entered in his favor against the policyholder. Statutory language to this effect is included in every automobile policy. (Ill. Rev. Stat. 1973, ch. 73, par. 1000.) It follows necessarily that plaintiff may not recover in a direct action against the insurer as by the summary judgment entered against Country Mutual on plaintiff's complaint and the subsequent jury verdict herein. This is to be contrasted with the situation regarding the action of Rogers, the insured, who made a proper adjustment of his liability to the damaged party, after breach of contract by the insurer, and then assigned the liquidated claim to the damaged person.

The summary judgment entered by the trial court in favor of plaintiff and against Country Mutual was erroneous. It follows that the judgment in favor of plaintiff and against Country Mutual for damages of $6500, following the jury verdict, was erroneous. Both judgments are reversed.

In view of the above, we need not consider the alternative request by Country Mutual that we grant credit by way of changing the obviously unfair result of permitting plaintiff to have a double recovery from both of the alleged tortfeasors and also independently from the insurance carrier concerning the damage to its property.

The summary judgment in favor of Rogers and against Country Mutual as regards liability on the policy is affirmed. The judgment in favor of plaintiff as assignee of Rogers aaginst Country Mutual in the amount of $5500 is affirmed. The summary judgment in favor of plaintiff and against Country Mutual on Count IV of plaintiff's complaint and the judgment in favor of plaintiff and against Country Mutual on the jury verdict in the amount of $6500 are both reversed.

Judgment affirmed in part and reversed in part.

EGAN, J., concurs.

Mr. JUSTICE SIMON, concurring in part and dissenting in part:

I disagree with the majority's conclusion that the plaintiff cannot recover directly against the insurer under the collision provisions of the policy covering nonowned vehicles for damage to the plaintiff's vehicle when it was in the possession or custody of Country Mutual's insured, Rogers. Otherwise I concur in the majority opinion.

*Marchlik v. Coronet Insurance Co.* (1968), 40 Ill.2d 327, 239 N.E.2d 799, is the leading Illinois case dealing with the right of an injured party to maintain a direct action against an insurance carrier to recover for the tort of the insured. That decision has been adhered to steadfastly by Illinois courts, but all cases relying on it involve, as *Marchlik* did, claims under the liability provisions of an insured's policy. The majority points out that Country Mutual contends "that the public policy of Illinois prohibits direct action by a claimant against the insurer of an *alleged tortfeasor*" (emphasis added). I do not dispute this statement of the law, nor do I disagree with *Marchlik*.

The plaintiff in this case sought to recover under the collision provisions of a policy in a direct action against the insurer. If a nonowned vehicle, as defined in the collision coverage section of the policy, is damaged in a collision, the insurer is obligated to compensate the vehicle owner for the loss regardless of whether the insured's conduct was tortious. Under these circumstances, there can be no intermingling of the liability of the insurer with the liability of the insured, one of the grounds on which the public policy prohibiting direct actions against an insurer is rationalized. (*Gianinni v. Bluthart* (1971), 132 Ill.App.2d 454, 461, 270 N.E.2d 480.) In the case of collision damage to a nonowned vehicle, the insurer's obligation arises upon the occurrence of the damage and does not depend on liability or indemnification of the insured. This is true whether the damage was caused by the deliberate or negligent act of the insured or a third party or by an act of God. For these reasons, this is not the type of direct action against an insurer

which section 388 of the Illinois Insurance Code (Ill. Rev. Stat. 1973, ch. 73, § 1000) or any announced public policy of this State prohibit.

. The majority states that statutory language prohibiting direct actions against the insurer is included in every automobile policy. In the case of the policy issued by Country Mutual to Rogers, this statutory language is found in the liability coverage section of the policy, but is not included in the section of the policy providing collision coverage for nonowned vehicles.

The majority relies on *Fidelity General Insurance Co. v. Nelsen Steel & Wire Co.* (1971), 132 Ill.App.2d 635, 640, 270 N.E.2d 616, to establish the principle that the insurer agrees to indemnify the policyholder. This is true in the case of a liability policy, the type of policy with which the court was concerned in *Fidelity General,* but it is not true in the case of collision coverage relating to a nonowned vehicle. Here, the plaintiff as owner of the damaged vehicle is entitled, in my opinion, to sue as a third-party beneficiary under the collision provisions of the policy between Rogers and Country Mutual.

My disagreement with the majority rises from the combination of two factors present in this case: first, that plaintiff need not prove a tort to recover, and second, that Country Mutual failed to undertake the defense of the insured as it was obligated to do. Under the circumstances presented, the law should not place Rogers, the insured, and the plaintiff, the owner of the damaged vehicle, in a position with respect to each other where the plaintiff must refrain from settling with Rogers in order to recover the full amount of its loss, while Rogers, on the other hand, must be plagued by the expense and uncertainties of the litigation because the plaintiff cannot settle with him without forfeiting its claim against his insurance carrier. This is an inequitable result which penalizes the damaged party and the insured by interferring with their desire to settle with each other and which the insurer should not be permitted to bring about by its own intransigence. My views would permit direct actions against insurance companies only in the limited area of claims by vehicle owners for recovery under the collision damage provisions of policies where the vehicle meets the definition of a "non-owned vehicle" and where the insurer refuses to defend.

I disagree with the majority's suggestion that the plaintiff's adjustment of the damage for $4000 with Sims and Rogers while the jury assessed the damage at $6500 demonstrates that the jury was liberal with Country Mutual's purse strings. The resolution of plaintiff's controversy with Sims and Rogers was the product of a settlement rather than a contested trial, and the plaintiff agreed to it on the assumption it could attempt

to recover an additional amount from Country Mutual. The plaintiff introduced three assessments of damage to the body, rear axle and transmission which exceeded $6500.

The plaintiff received $3000 in settlement from Rogers. I do not believe this amount should be subtracted from the jury award because to do so would permit Country Mutual to benefit from its wrongful refusal to defend its insured, a result inconsistent with sound public policy. Sims paid plaintiff $1000 in settlement of a claimed breach of contract for failure to provide insurance for the plaintiff's vehicle during the time it was in his possession. There is no way of allocating this settlement sum precisely between the actual damages to the car and other costs to the plaintiff stemming from the contract breach, so this amount should not be subtracted from plaintiff's award. Though this results in the plaintiff receiving an amount in excess of that which the jury found to be its damages, the amounts received in settlement from other defendants should not be credited against the award to give Country Mutual a windfall, allowing it to avoid partial liability, where its refusal to defend caused the dilemma. The jury decided the damages to plaintiff's automobile were in the amount of $6500. The plaintiff will recover $3000 from Country Mutual in excess of the amount of Rogers' attorneys' fees on the judgment against Country Mutual which Rogers assigned to the plaintiff. To avoid requiring Country Mutual to pay plaintiff more than the jury found to be the amount of damage to the automobile, I would reduce the judgment plaintiff was awarded against Country Mutual from $6500 to $3500.

I concur in the court's decision except for that portion which reverses the summary judgment in favor of plaintiff and against Country Mutual on Count IV of plaintiff's complaint and the judgment in favor of plaintiff and against Country Mutual on the jury verdict in the amount of $6500. For the reasons stated, I would reduce that verdict to $3500.