MARION ZEGAR, on her own Behalf and on Behalf of all Other Persons Similarly Situated, Plaintiff-Appellant, v. SEARS ROEBUCK AND COMPANY *et al.*, Defendants-Appellees.

First District (4th Division)   No. 1—90—1055

Opinion filed March 28, 1991.—Rehearing denied April 29, 1991.

Victor Potysman & Associates, of Chicago (Victor Potysman, of counsel), for appellant.

Sonnenschein, Nath & Rosenthal, of Chicago (Roger K. Heidenreich and Leslie J. Khoshaba, of counsel), for appellees.

JUSTICE LINN delivered the opinion of the court:

Plaintiff, Marion Zegar, on her own behalf and as alleged class representative of others similarly situated, filed this action against defendants, Sears Roebuck & Company (Sears) and Allstate Insurance Company (Allstate). Zegar seeks to compel Allstate, Sears' insurer, to pay medical expense benefits directly to those persons injured on the premises of Sears stores. Zegar relies on certain language in the policy of insurance that she claims authorizes third-party claimants to directly sue the insurer (Allstate) without first receiving a judgment or settlement from the insured (Sears).

Sears is not a party to this action because Zegar has nonsuited her negligence claim against the store. Allstate moved to dismiss the remaining amended count of the complaint against it, arguing that Zegar failed to state a cause of action because the policy prohibits a lawsuit against the insurer before a final judgment or settlement. The trial court agreed with Allstate and dismissed the complaint.

We affirm.

BACKGROUND

On March 13, 1989, Zegar slipped and fell in a Sears store in Niles, Illinois. According to her complaint, she was injured in the fall

because of Sears' negligence in polishing or waxing its floor. She sought damages against Sears in excess of $15,000 for medical expenses and lost wages.

Zegar joined Allstate as a party defendant, seeking to recover her medical expenses directly from the policy of insurance on the grounds that it "provided medical pay insurance for lawful occupants of Sears who were injured therein." She alleged that Allstate wrongfully failed to inform her and others similarly situated that they were entitled to these medical expense payments and refused to pay them.

The Allstate policy in issue is a commercial general liability policy. Under the "bodily injury" coverage, Allstate agrees to indemnify Sears for damages Sears may become liable to pay to injured parties. The policy also contains medical expense coverage, the application of which is in issue in the pending lawsuit.

The general liability coverage for bodily injury and property damages provides in part, under "Coverage A":

"Liability

1. Insuring Agreement

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies ***.

* * *

Coverage C—Medical Payments

1. Insuring Agreement

   a. We will pay medical expenses as described below for 'bodily injury' caused by an accident ***.

   b. We will make these payments regardless of fault.

These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for [first aid and necessary medical services, etc.]''

OPINION

The central issue presented in this case is whether Zegar's claim for medical expense payments under the Allstate insurance policy may be maintained before (or in the absence of) a tort settlement or judgment against the insured, Sears. Another way of stating it is whether the Allstate policy can be read to allow third-party beneficiaries of the medical expenses coverage to maintain a direct action against the insurance company.

■ In Illinois, direct actions against insurance companies are against public policy. (See, *e.g.*, *Marchlik v. Coronet Insurance Co.* (1968), 40 Ill. 2d 327, 333, 239 N.E.2d 799, 802-03 (Court considered

statutory provisions that indicate "a legislative policy against direct actions against insurers before judgment" and concluded that Illinois public policy precludes the use of Illinois courts as the forum for cases under the Wisconsin direct action statute); *Richardson v. Economy Fire & Casualty Co.* (1985), 109 Ill. 2d 41, 47, 485 N.E.2d 327, 329 (The "public policy of this State prohibits an injured party from recovering personal injury damages against an insurance carrier on account of the negligence of its insured prior to obtaining a judgment against the insured").) The commonly cited reason behind the policy is to prevent the jury in the personal injury action from becoming aware that the defendant tort-feasor is insured and thereby possibly awarding a larger verdict under the "deep pockets" theory. *E.g., Loeber Motors, Inc. v. Sims* (1975), 34 Ill. App. 3d 342, 351, 340 N.E.2d 132; see *Gianinni v. Bluthart* (1971), 132 Ill. App. 2d 454, 460-61, 270 N.E.2d 480.

In the pending case, Zegar attempts to distinguish her claim for medical expense reimbursements from the legal "damages" she may be able to recover from Sears in a negligence action. In other words, her direct action against Allstate does not depend on the resolution of the tort liability of the insured because the policy language states that Allstate will pay medical expenses regardless of "fault." Zegar maintains that her position is bolstered by the policy's separate and distinct coverages, for "damages" under Coverage A and for "medical expenses" under Coverage C.

We recognize the distinction between the two concepts, although we believe that "medical expenses" may also be viewed as a component of an injured party's legal "damages" in a tort action. Apparently, Zegar contends that the bar against direct actions should be limited to the situations in which the insured's liability to the injured party is in issue. In those cases, the liability issues are first resolved, by settlement or judgment, and only then does the insurance company's obligation to indemnify its insured ripen. If the insured cannot or does not pay, the judgment creditor may attach the insurance proceeds as an asset of the judgment debtor, in supplemental garnishment or citation proceedings.

The situation before us differs from the above situation because the claimant is not, at the present time, suing Sears in tort. Rather, Zegar's lawsuit against Allstate attempts to reach the "no-fault" medical expense coverage under a third-party beneficiary theory of contract law. She argues that because the policy expressly distinguishes between (1) "damages" adjudicated by "suit" or settlement and (2) "medical expenses" to be paid regardless of fault, there is no reason

to bar her from collecting payment for her medical expenses directly from Allstate in accordance with the policy language.

Allstate counters by citing paragraph 3 of "Section IV—Commercial General Liability Conditions," which states:

"**3. Legal Action Against Us.**

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a 'suit' asking for damages from an insured, or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; *** an agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or claimant's legal representative."

The trial court agreed with Allstate's interpretation of the relevant policy provisions and concluded that there was no authorization under the policy for Zegar to directly sue Allstate for medical expenses before the resolutions of her negligence claim against Sears. In reaching this conclusion, the court primarily relied on *Loeber Motors, Inc. v. Sims* (1975), 34 Ill. App. 3d 342, 340 N.E.2d 132.

In *Loeber Motors*, a Mercedes Benz owned by plaintiff (Loeber Motors) was damaged when the friend of a prospective purchaser turned the car over during a test drive. Country Mutual, the insurer of the driver, refused payment on various grounds. The litigation included a variety of claims against different parties, but the portion of the case relevant here concerned the viability of that portion of Loeber Motor's complaint that sought a judgment against Country Mutual for denial of payment under the collision coverage of its policy. Country Mutual argued that the public policy of Illinois barred the injured claimant's direct action against Country Mutual as insurer of the alleged tort-feasor. The trial court nevertheless entered summary judgment in favor of plaintiff on the coverage issues, and a jury subsequently assessed the amount of damages against the insurer.

On appeal, a majority of the court reversed the judgments entered against Country Mutual pursuant to its collision coverage, agreeing with the insurer that Illinois policy prohibits injured parties from directly suing insurance companies.

In his partial dissent, Justice Simon acknowledged the public policy rationale of *Marchlik*, but made a distinction between liability insurance and collision insurance. (34 Ill. App. 3d at 353, 340 N.E.2d at

140) (Simon, J., dissenting in part).) Liability insurance requires a determination of liability; that is, the insured's conduct must be considered negligent before the coverage applies and the injured party must seek damages against the insured before the insured's duty to pay ripens. In contrast, collision insurance obligates the insurer to compensate the vehicle owner for the loss regardless of whether the insured's conduct was tortious. According to Justice Simon, because fault is not in issue, there is no danger that the liability of the insured and the liability of the insurer would become intermingled, which is one of the grounds on which the public policy against direct actions against insurers is rationalized. Hence, the injured claimant should not be barred by public policy from maintaining a direct action under the collision coverage.

We have found no Illinois cases since *Loeber Motors* that have considered this distinction between liability and collision insurance. While we find Justice Simon's partial dissent well reasoned in many respects, we believe the majority opinion states Illinois law correctly. It is true that the "no-fault" medical expenses coverage, like the collision coverage referred to in *Loeber Motors*, is distinguishable from general liability coverage in that proof of the insured's fault is not required. We also recognize that the Coverage A "damages" provision is worded differently from the Coverage C "medical expenses" language. It could be assumed from this, as Zegar urges, that Allstate's expressed willingness to pay Coverage C without regard to "fault" should obviate the need for Zegar to wait for a trial or settlement on Sears' liability for negligence damages before receiving Allstate's payment of her medical expenses. The question that remains, however, is whether it necessarily follows that Zegar is entitled to bring a direct action against Allstate, for her medical expenses alone, outside the context of a lawsuit against Sears.

■ We do not find that the insurance contract between Sears and Allstate contemplates a direct action against the insurer for an injured party's medical expenses whenever any person is injured on the insured premises of a Sears store. The medical payments coverage may be viewed as a salutary attempt to *allow*, but not require, Sears to pay relatively small, easily ascertainable medical reimbursements, without a formal determination of fault. This would allow Sears, as insured, to facilitate settlement of some claims by paying actual medical costs without admitting or contesting liability. In fact, both sides agree that the general purpose of medical payments provisions is to "create a fund for the payment of medical services so that those injured will not necessarily be contemplating how to impose liability

upon the insured." (8A Appleman *Insurance, Law and Practice* §4902, at 229 (West 1981).) Moreover, absent such a provision allowing the insured to pay medical expenses, the insured would risk waiving its claim for indemnity against the insurer if the insured went ahead and voluntarily assumed payment for the injured party's medical expenses. See 8A Appleman, §§4900, 4901, at 216-24.

Allstate does not assert that an injured person may never sue it for medical payments under the policy. Its position is that Zegar's claim for medical payments is premature because she has made a tort claim against Sears. Presumably, Zegar has the option of either pursuing her tort claim against Sears and including her demand for medical expenses in the context of that suit or releasing her tort claim against Sears and then seeking medical expenses from Allstate.

In *Loeber Motors* (34 Ill. App. 3d at 352, 340 N.E.2d at 139), the court noted, "The injured or damaged party has no contractual relationship with the insurer and has no rights under the policy until and after judgment has been entered in his favor against the policyholder." We believe that although in some respects Zegar may be viewed as a third-party beneficiary of the contract between the insured and insurer, the coverage provisions of an insurance policy are primarily for the benefit of the contracting parties and only incidentally for injured claimants.

Section IV of Allstate's policy, which sets forth the "Commercial General Liability Conditions," illustrates the nature of the contractual rights and duties between insured and insurer. This section requires Sears to notify Allstate of "occurrences" which may result in a claim. The notice must include details of the occurrence and the names and addresses of any injured persons and witnesses. Sears must cooperate in investigating, settling or defending against the claim or "suit" and Sears is not allowed to voluntarily assume any obligation or "incur any expense, other than for first aid, without [Allstate's] consent." Claimed medical expenses must be incurred and reported to Allstate within one year of the date of the accident and the injured person must submit to examination. We believe that the fair interpretation of such conditions is that Sears, as the insured on whose premises the injury occurs, has the duty to work with Allstate and the injured party in processing claims and suits. If the injured party does not make a claim, or if Sears resolves a claim on its own without fulfilling the stated conditions, Allstate's liability never accrues.

Section IV further provides, in paragraph 3, that "no person or organization has a right" to "join [Allstate] as a party or otherwise bring [it] into a 'suit' asking for damages from an insured" or to sue

Allstate "under this coverage part" (which includes Coverage C medical payments) "unless all of its terms have been fully complied with."

As the trial court held, this is a "no direct action" clause, the presence of which is consistent with the public policy of this State. In our opinion, nothing in the insurance policy states or strongly suggests that a claimant may maintain a direct action for medical expenses without regard to the resolution or of his or her potential claim against the insured for bodily injuries. We conclude that absent an express or clearly implied right to sue Allstate directly for the medical expenses under Coverage C, Zegar and the alleged class of persons injured at Sears' stores cannot maintain an action to recover medical expenses directly from Allstate, at least until after a settlement, adjudication, or release of claim against Sears has been secured. *E.g., Richard v. Economy Fire & Casualty*, 109 Ill. 2d 41, 485 N.E.2d 327; see also *Scroggins v. Allstate* (1979), 74 Ill. App. 3d 1027, 393 N.E.2d 718.

Affirmed.

JOHNSON and McMORROW, JJ., concur.