**MAY'S FAMILY CENTERS, INC., Plaintiff,**

v.

**GOODMAN'S, INC., Defendant and Third Party Plaintiff,**

v.

**KATTEN, MUCHIN, ZAVIS, PEARL AND GALLER, Third Party Defendants.**

No. 82 A1786.

United States District Court, N.D. Illinois, E.D.

Jan. 10, 1985.

Richard G. Schultz, Richard A. Devine, Foran, Wiss & Schultz, Chicago, Ill., for defendant and third-party plaintiff.

Donald B. Hilliker, Linda J. Chase, Phelan, Pope & John, Ltd., Chicago, Ill., for third party defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

May's Family Centers, Inc. ("May's")[1] sues Goodman's, Inc. ("Goodman's") for breach of contract[2] stemming from Goodman's failure to consent to May's assign-

---

1. As repeated in the opening footnote in each of this Court's earlier opinions, and as the caption reflects, the convenient shorthand reference to each party is a possessive noun. That makes it awkward to engage in proper usage where that noun is itself employed in the possessive form (as in "May's's Complaint" or "Goodman's' motion"). With apologies to grammatical purists, for ease of expression this opinion (like the earlier ones) will cheat a bit by simply referring, for example, to "May's Complaint" and "Goodman's motion."

2. More accurately, May's claim originated in June 1982 as a counterclaim to claims asserted by Goodman's in May's bankruptcy proceedings. In accord with Paragraph 2(c) of this District Court's December 20, 1982 general order, May's counterclaim was transferred from the Bankruptcy Court to this Court. Katten Muchin Mem. 11 is thus wrong in maintaining the action is in this Court under diversity jurisdiction. That however has no impact on the disposition of the current motion.

ment to Zayre Corporation ("Zayre") of May's lease on Chicago business property (the "Premises"). May's lease (the "Lease") contemplated the possibility of such an assignment but required the consent of Goodman's, which consent was not to be unreasonably withheld.

Goodman's has in turn filed a third-party complaint ("Goodman's Complaint") under Fed.R.Civ.P. ("Rule") 14(a) against the law firm of Katten, Muchin, Zavis, Pearl & Galler ("Katten Muchin," treated as a singular collective noun), seeking indemnification for any judgment awarded May's on its contract claim.[3] Goodman's says it retained Katten Muchin to carry out Goodman's legal obligations as to the proposed assignment of the Lease. If those obligations were not met, as May's original Complaint alleges, Goodman's claims Katten Muchin was negligent in representing Goodman's and should be held accountable for any damages May's is awarded against Goodman's.

Katten Muchin now moves under Rule 14(a) to strike Goodman's Complaint. For the reasons stated in this memorandum opinion and order, Katten Muchin's motion is conditionally denied.

### Facts[4]

On January 21, 1981 May's and Zayre entered into their assignment agreement (the "Agreement"), calling for a February 6, 1982 closing date. May's first notified Goodman's of the Agreement and of the February 1982 closing date on January 25, 1982 (sic). Aware perhaps that the Febru-

ary 6 date was no longer realistic, May's also approached Zayre in January for an extension of the closing deadline. Zayre agreed to reset the closing for April 1.[5]

Depositions and documentary materials filed with this Court in connection with Goodman's summary judgment motion (disposed of by this Court's unpublished Sept. 18, 1984 opinion) confirm the allegations of Goodman's Complaint ¶ 4 that in early 1982 Katten Muchin was acting on Goodman's behalf with respect to the Lease. Indeed May's attorneys appear consistently to have addressed their correspondence about the requested consent to Katten Muchin.

Neither Goodman's Complaint nor May's Complaint really defines the precise course of events between late January 1982 and the extended April 1 closing date. However May's does allege:

1. It did not receive the required consent forms until after the April 1 date had passed and Zayre had withdrawn from the transaction.

2. Goodman's refused or unreasonably withheld its consent in violation of the clear terms of the Lease.

Goodman's in turn has alleged any default on its part in consenting (if there were one) was attributable to Katten Muchin's negligence.

### Rule 14(a) and Ancillary Jurisdiction

■ Rule 14(a) provides:

At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and com-

---

3. In fact Goodman's Complaint purports to sound in both indemnity (Count I) and contribution (Count II), but only the first theory appears tenable. Contribution is essentially a tort-oriented concept. It seems unlikely that the actions underpinning May's breach of contract suit could lend themselves to apportionment—to contribution—between Goodman's and Katten Muchin. Though any definitive ruling in this opinion would of course be premature, Goodman's may well be limited to an all-or-nothing recovery under an indemnity theory.

4. As always on what is effectively a motion to dismiss, the well-pleaded factual allegations of Goodman's Complaint are taken as true, with all reasonable factual inferences drawn in Good-

man's favor. *Wolfolk v. Rivera,* 729 F.2d 1114, 1116 (7th Cir.1984). This account also draws (to the extent necessary) on the allegations in May's Complaint. In the latter respect see also this Court's earlier opinion, 571 F.Supp. 1012, 1013–14 (N.D.Ill.1983).

5. Whether February 6 or April 1 was the binding closing date remains unsettled in the principal litigation. May's Complaint Count I alleges damages based on Goodman's failure to consent to the assignment before February 6. Count II, pleaded in the alternative under Rule 8(e)(2), makes a similar claim based on the extended April 1 closing date. Goodman's Complaint assumes the April 1 date was determinative, and this opinion proceeds on that assumption.

plaint to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him.

While impleader is usually permitted when those conditions are met, Rule 14(a) does not define this Court's jurisdiction. Rule 82 makes plain the Rules "shall not be construed to extend or limit the jurisdiction of the United States district courts or the venue of actions therein." Accordingly, where as here there is no independent basis for federal jurisdiction over the third-party claim, this Court must determine whether its ancillary jurisdiction embraces the claim. That entails an inquiry whether the third-party claim (1) arises from the same "nucleus of operative fact" (*United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966)) as the principal claim and (2) "depends at least in part upon the resolution of the primary lawsuit." *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 376, 98 S.Ct. 2396, 2404, 57 L.Ed.2d 274 (1978). It is not enough "that the exercise of ancillary jurisdiction over nonfederal claims has often been upheld in situations involving impleader," *id.* at 375, 98 S.Ct. at 2403.

Goodman's claim against Katten Muchin and May's claim against Goodman's do "derive from a common nucleus of operative fact." Goodman's liability to May's turns—at least in significant part—on precisely what Katten Muchin did during the relevant period (January to April 1982) and why. Indeed Goodman's has alleged it put itself in Katten Muchin's hands as to the lease assignment. And by definition Katten Muchin's conduct during that same period is critical to Goodman's third-party claim.

■ But such a common factual basis does not alone suffice to justify the exercise of ancillary jurisdiction. *Owen Equipment*, 437 U.S. at 376, 98 S.Ct. at 2403

teaches a third-party complaint asserting a nonfederal claim is within this Court's ancillary jurisdiction only if "[i]ts relation to the original complaint is ... not mere factual similarity but logical dependence." [6] In terms of this case:

    1. Katten Muchin's liability to Goodman's must depend on a finding of Goodman's liability to May's or

    2. Katten Muchin's *non* liability to Goodman's must be established by a finding of Goodman's *non* liability to May's.

Katten Muchin Mem. 7 correctly points out the first of those alternatives is not met here:

[A] decision in the primary action imposing liability on Goodman's would have no effect on any liability of Katten, Muchin. Goodman's would still have to prove Katten, Muchin breached a duty of care in handling his [sic] legal affairs.

Because the legal standards applicable to the principal claim and the third-party claim differ, the fact that the law firm's conduct may have given rise to a valid breach of contract claim against its client need not constitute legal malpractice. Moreover Katten Muchin Mem. 4–5 is right in saying the issues dispositive of Goodman's malpractice claim may not be relevant to May's breach of contract claim.

But the obverse side of the coin *is* present: Goodman's nonliability on the breach of contract claim would compel Katten Muchin's nonliability for malpractice. If Goodman's is found to have met all its legal obligations under the Lease, Katten Muchin can hardly be charged with negligence in handling the Lease assignment.

■ In short, Goodman's liability to May's on the principal claim is a necessary though not a sufficient condition of Katten

---

**6.** As *United States v. One 1977 Mercedes Benz*, 708 F.2d 444, 452 (9th Cir.1983) put it (citations omitted):

    Thus, a third-party claim may be asserted only when the third party's liability is in some way dependent (sic) on the outcome of the

main claim and the third party's liability is secondary or derivative.

Plainly the second of those conditions is satisfied, and the text explains why the first is as well.

Muchin's secondary liability to Goodman's.[7] That degree of logical dependence sustains Goodman's Complaint under this Court's ancillary jurisdiction. If impleader of a nonfederal third-party claim required *perfect* identity with the principal claim, the very purposes of ancillary jurisdiction—to resolve in a single forum conflicting claims arising from a single transaction (see *Moore v. New York Cotton Exchange*, 270 U.S. 593, 609–10, 46 S.Ct. 367, 370–71, 70 L.Ed. 750 (1926))—would be thwarted in a wide range of cases. Rule 14(a) would effectively be rewritten by deleting its "may be liable" language and retaining only "is liable."

### *Rule 14(a) and Judicial Discretion*

■■■ Thus jurisdiction—power—exists to hear Goodman's claim under the ancillary jurisdiction doctrine. But the decision whether to exercise that power is reserved to this Court's "sound discretion." *One 1977 Mercedes Benz*, 708 F.2d at 452. And exercise of that discretion should in turn serve the ends of judicial economy, convenience and fairness to the litigants. *U.S. General, Inc. v. City of Joliet*, 598 F.2d 1050, 1054 (7th Cir.1979). More particularly, the aim is to "avoid circuity of action and eliminate duplication of suits based upon closely related matters." 6 Wright & Miller, *Federal Practice & Procedure: Civil* § 1443, at 210. At the same time, prejudice to the other litigants must be avoided, whether deriving from the untimely filing of the third-party complaint or from undue complication of the principal lawsuit. See *In re "Agent Orange" Product Liability Litigation*, 544 F.Supp. 808, 810–11 (E.D.N.Y.1982).

■■ Those considerations support the propriety of impleader in the circumstances of this case (though, as later discussion will make plain, they also call for the imposition of some conditions on that impleader). As the preceding section of this opinion suggests, there is considerable overlap between the facts necessary to establish May's breach of contract claim and those underlying Goodman's malpractice claim. Validity or invalidity of May's claim turns upon such facts as the discussions among the parties during the first four months of 1982, the dates on which documents were requested and delivered, the reasons for any delay in delivery and so on. Those same facts are directly relevant to the question of Katten Muchin's liability. To require Goodman's to duplicate those proofs in a separate action would not only waste resources (including judicial resources)—it would also create an unfair risk of inconsistent determinations from the same facts in the two actions.

Nor would impleader significantly complicate this litigation. Goodman's case against Katten Muchin will of course require proof of facts not strictly relevant to the May's claim, as for example the nature of any instructions Goodman's gave to its attorneys. Those facts, however, are unlikely to be either so intricate or so remote from the factual basis of the principal claim as to complicate the lawsuit unnecessarily. And should that evaluation prove seriously in error, this Court always has recourse to

---

**7.** Illinois law, which provides the rules of decision on the substance of Goodman's third-party claim, recognizes the possibility of secondary liability on Katten Muchin's part. *Doyle v. Shlensky*, 120 Ill.App.3d 807, 820, 76 Ill.Dec. 466, 477, 458 N.E.2d 1120, 1131 (1st Dist.1983) (citations omitted) teaches:

> The attorney-client relationship is one of agent-principal.... Mere engagement of a law firm has been held to create "an attorney-client relationship governed by principles of agency law." ...

And *Security Insurance Co. of Hartford v. Mato*, 13 Ill.App.3d 11, 18, 298 N.E.2d 725, 731 (2d Dist.1973) (citations omitted) holds:

> It is well established that a principal has a right of action against its agent for loss or damage resulting from the agent's breach of duty or wrongful act ... and that if an agent disobeys the reasonable and lawful instructions of the principal, causing loss or injury to the principal, the agent is liable for such damages....

If Goodman's alleged breach of the Lease is attributable to Katten Muchin's negligence or breach of its duty to Goodman's, Katten Muchin could be liable for all (or perhaps part, but cf. n. 3) of any damages awarded May's against Goodman's.

severance and a separate trial of the Goodman's claim pursuant to Rule 42. See 6 Wright & Miller § 1443, at 214–15.[8]

Katten Muchin makes two arguments against granting impleader. Neither is persuasive.

■ First Katten Muchin contends it will be put to the time and expense of additional discovery more than two years after the principal lawsuit was filed. So far as its own resources are concerned, Katten Muchin has little if anything to complain about. After all, it would have to bear the cost of that discovery even if Goodman's Complaint were filed as an independent action. See *Old Republic Insurance Co. v. Concast, Inc.*, 99 F.R.D. 566, 569–70 (S.D. N.Y.1983). It is rather *May's* that should be concerned, lest the need for such additional discovery delay trial on its principal claim. Discovery on May's claim is substantially complete, with the pretrial conference set for late March 1985.[9] But it appears any additional discovery Katten Muchin may need can be completed with dispatch.[10] And this Court can and will prevent any untoward delay in the disposition of the principal claim. Toward that end:

1. This denial of Katten Muchin's motion to strike is conditioned upon a showing pursuant to Rule 26(f) that discovery

on the third-party claim will be limited and will not interpose substantial delay.

2. Addition of Goodman's Complaint to this action will not adversely affect the priority of the lawsuit on this Court's trial call. Once discovery has been completed and the final Rule 16 pretrial conference held, this action will stand in the same position for trial as if the presently-set March 29 pretrial conference date had been met.[11]

■ Katten Muchin's second argument is that Goodman's claim should instead be asserted in Katten Muchin's state court action against Goodman's for fees, filed in May 1984. Malpractice is of course an affirmative defense to a suit for fees (see *Luster v. Steingard*, 191 Ill.App. 573 (1st Dist. 1915) (abst.)),[12] which Goodman's must properly assert in the state action or be deemed to have waived. See *M. Loeb Corp. v. Brychek*, 98 Ill.App.3d 1122, 1125, 54 Ill.Dec. 290, 293, 424 N.E.2d 1193, 1196 (1st Dist.1981). But as already pointed out, it is at least equally appropriate to deal with Goodman's claim here, given its close connection to May's claim.[13]

■ That then creates the prospect of two lawsuits, each providing a reasonable context for Goodman's claim. Judicial ingenuity is surely equal to the task of minimizing, or perhaps eliminating entirely, any potential for prejudice and diseconomy in that situation.[14] All things considered, this

8. Even were that to take place, it could have one important advantage over two separate lawsuits. With Katten Muchin a party litigant, trial of the Goodman's-May's dispute might be engineered to make its outcome binding on Katten Muchin as well (thus avoiding one serious disadvantage of separate cases).

9. Somewhat to this Court's surprise, however, May's has not taken up the cudgels on the current motion.

10. Katten Muchin Mem. 10 points out discovery on May's claim involved 13 depositions spanning 19 days. Even were discovery on Goodman's claim to take as long (a doubtful premise), that need not significantly delay progress of the lawsuit.

11. This Court's practice, with rare exceptions, is to give cases priority for trial in the sequence they have reached the final pretrial order stage.

12. Katten Muchin Mem. 12 urges Goodman's should advance its malpractice claim as a counterclaim in the state court action. But because the measure of Goodman's damages for malpractice would appear to be the size of any award against Goodman's in favor of May's, the action before this Court would seem the proper locus for at least that aspect of the malpractice claim.

13. "At least" is a proper characterization, for adjudication here would eliminate any prospect of inconsistent determinations, as trials in two separate cases might not.

14. For example, this Court is mindful of Ill.Rev. Stat. ch. 110, ¶ 2–619(a)(3) ("Paragraph 2–619(a)(3)"), which provides for dismissal on an opposing party's motion if a prior action is pending between the same parties on the same cause. Goodman's third-party action here could therefore trigger dismissal of a malpractice

Court determines the appropriate course is to deny Katten Muchin's motion to strike Goodman's Complaint and to impose two additional requirements on the parties:

1. Katten Muchin is ordered not to assert a prior-action-pending defense under Paragraph 2-619(a)(3) in the state court action. That will put Katten Muchin and Goodman's fully at issue in the state court proceedings (as Katten Muchin has urged).

2. All discovery undertaken as between Katten Muchin and Goodman's in this action shall be discovery in the state court action as well, and vice versa.

Denial of Katten Muchin's motion to strike on those two conditions effectively allows Goodman's claim to proceed in both the appropriate forums, but in a coordinated fashion. When either this Court or the state court renders judgment on the malpractice claim, that judgment will be binding on the parties in the other court, and the matter will have been concluded with the least expenditure of resources—both those of the parties and those of the judicial systems.

### Conclusion

Goodman's Complaint is within the ancillary jurisdiction of this Court. Moreover this Court, in the sound exercise of its discretion under Rule 14(a), cannot decline jurisdiction over Goodman's claim. Accordingly Katten Muchin's motion to strike is conditionally denied, subject to the filing of Rule 26(f) submissions by both Goodman's and Katten Muchin on or before January 28, 1985, and subject to the two additional requirements set out in the final section of this opinion.

counterclaim in the state action. That would force Goodman's and Katten Muchin to do battle in two arenas, though the disadvantages of

such double litigation (including possibly inconsistent results) have already been adverted to more than once.