NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Plaintiff,

v.

CONTINENTAL ILLINOIS CORPORATION, et al., Defendants.

HARBOR INSURANCE COMPANY and Allstate Insurance Company, Plaintiffs,

v.

CONTINENTAL ILLINOIS CORPORATION, et al., Defendants.

Nos. 85 C 7080, 85 C 7081.

United States District Court, N.D. Illinois, E.D.

Nov. 13, 1986.

See also, D.C., 646 F.Supp. 746.

James G. Hiering, Dennis C. Waldon, Jeffrey I. Berkowitz, Richard L. Reinish, A. Benjamin Goldgar, Keck, Mahin & Cate, Chicago, Ill., for plaintiff.

Lowell E. Sachnoff, Barry S. Rosen, Dean A. Dickie, Brian D. Roche, Sachnoff, Weaver & Rubenstein, Ltd., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Harbor Insurance Company ("Harbor"), Allstate Insurance Company ("Allstate") and National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") have sued Continental Illinois Corporation ("CIC"), its subsidiary Continental Illinois National Bank and Trust Company of Chicago ("Bank")[1] and a host of other defendants, seeking to avoid liability under the directors' and officers' ("D & O") policies plaintiffs had issued to CIC.[2] One of those other defendants, Federal Deposit Insurance Corporation ("FDIC"), seeks leave (1) to file a counterclaim ("FDIC's Counterclaim")[3] and (2) to join as counterdefen-

---

1. CIC and Bank are collectively called "Continental."

2. Because all this Court's opinions in these cases tend to begin with the same opening description, some means of early differentiation is useful. Solely for that purpose, it is noted this is this Court's eleventh written opinion since the cases were assigned to its calendar after a series of recusals by other judges of this District Court.

3. Because these are separate actions (one with Harbor and Allstate as plaintiffs, the other brought by National Union), FDIC is technically proffering two counterclaims. It has, however, combined them into a single document, and for

dants Continental Casualty Company ("CNA") and First State Underwriters Agency of New England Reinsurance Corporation ("First State"), the issuers of excess D & O policies to CIC.[4] For the reasons stated in this memorandum opinion and order, FDIC is granted leave to file its Counterclaim but denied leave to join CNA and First State.

### Direct Actions

FDIC's Counterclaim seeks to enforce rights to D & O policy coverage pursuant to a June 6, 1986 assignment from Continental's former officers and directors who had been defendants in the underlying securities litigation, *FDIC v. Anderson*, 82 C 4712 (N.D.Ill.). That assignment, resulting from settlement of that action by FDIC and the individual defendants, is for $88 million (unless this Court holds only a lesser amount reasonable). Harbor, Allstate and National Union have already injected the settlement into this action by challenging its validity in Count VII of their respective complaints.

As a threshold matter Harbor-Allstate-National Union contend FDIC's Counterclaim is barred by Illinois law. Illinois public policy [5] prohibits an injured party from bringing a direct action against an insurer "until after liability ha[s] been established and judgment rendered against an insured." *Marchlik v. Coronet Insurance Co.*, 40 Ill.2d 327, 333, 239 N.E.2d 799, 802 (1968).[6] As Harbor-Allstate-National Union would have it, the fact FDIC's Counterclaim is based on a settlement and a dismissal without prejudice, rather than a judgment, causes its current assertion to violate that policy.[7]

That issue is not new to this Court. Despite Section 388's reference to a "judgment," this Court's opinion in *Fowler v. Bickham*, 550 F.Supp. 71, 72 (N.D.Ill.1982) said:

> Surely there is a substantial likelihood that Illinois law would treat an enforceable agreement for settlement as the equivalent of a judgment for that purpose.

simplicity this opinion will continue to use the singular "counterclaim."

4. This Court's first opinion after having inherited these cases, 110 F.R.D. 608 (N.D.Ill.1986), denied the motions of CNA and First State to intervene. They failed to satisfy a number of the conditions prescribed by Fed.R.Civ.P. ("Rule") 24(a), including that of timely application (see 110 F.R.D. at 610). In an ironic way, the litigants seem to have switched sides on that issue in dealing with the current motion.

5. That policy is grounded in Ill.Rev.Stat. ch. 73, ¶ 1000, Illinois Insurance Code § 388 ("Section 388"):

> No policy of insurance ... shall be issued ... unless it contains in substance a provision that the insolvency or bankruptcy of the insured shall not release the company ... and stating that in case a certified copy of a judgment against the insured is returned unsatisfied in any action brought by the injured person ... because of such insolvency or bankruptcy, then an action may be maintained by the injured person ... against such company under the terms of the policy ... for the amount of the judgment in such action not exceeding the amount of the policy.

6. FDIC contends because that Illinois rule is more procedural than substantive, the federal

Rules and not Illinois law control the issue. That is a gross oversimplification of the *Erie* doctrine, and FDIC cites no federal case law in support of its argument. Of course the tyranny of labels ("substantive" v. "procedural") is not determinative, though *Marchlik* itself characterizes the direct action as substantive. Perhaps sensing the lack of force in the argument, FDIC consigned it to a footnote. This Court does likewise. This issue apart, throughout this litigation all parties have rationally treated Illinois law as controlling—and that is enough. *National Ass'n of Sporting Goods Wholesalers, Inc. v. F.T.L. Marketing Corp.*, 779 F.2d 1281, 1284–85 (7th Cir.1985).

7. Harbor-Allstate-National Union also urge FDIC's Counterclaim is barred because the former officers and directors are still solvent. That wholly distorts the language of Section 388, which simply requires policies to contain a provision intended to prevent insurers from avoiding liability when their insureds are insolvent. See *Pohlman v. Universal Mutual Casualty Co.*, 12 Ill.App.2d 153, 160, 138 N.E.2d 848, 852 (1st Dist.1956). When Illinois courts (as in *Pohlman*) say that statute does not imply a primary action against an insurer before the injured party has established the insured's liability, that carries no implication at all as to the injured party's right of action in the current situation.

In fact, *Loeber Motors, Inc. v. Sims*, 34 Ill.App.3d 342, 340 N.E.2d 132 (1st Dist. 1975) did just that: It affirmed a summary judgment against an insurer and in favor of the injured party who had settled with the insured after the insurer breached its contract. In return for a dismissal without prejudice, the insured had assigned its rights to plaintiff, the injured party. Because *Loeber, id.* at 350–51, 340 N.E.2d at 138–39 found one basic reason for adhering to the policy against direct actions "is to prevent intermingling the issues of liability of an insurance company with the liability of its insured and with the assessment of damages," it saw no reason to prohibit a direct action where the insured "made a proper adjustment of his liability to the damaged party, after breach of contract by the insurer, and then assigned the liquidated claim to the damaged person."

■ As in *Loeber*, FDIC's claims against insurers Harbor, Allstate and National Union seek to enforce a settlement between FDIC (the injured party) and Continental's former directors and officers (the insureds). As in *Loeber*, the insureds negotiated their settlement with the injured party and assigned their rights under the D & O policies after the insurers allegedly breached their obligations under those policies. And as in *Loeber*, the injured party—in return for the assignment—dismissed without prejudice its action against the insureds.

In sum, this direct action closely parallels that in *Loeber*. It is not foreclosed by Section 388.

#### After-Acquired Counterclaims

■ Rule 13(e) allows a party to seek to supplement its pleadings by adding a counterclaim if that claim matured or was acquired by the party after it served its initial pleading. Such an after-acquired claim is not a compulsory counterclaim and may be asserted only with the court's permission.

See *Shwab v. Doelz*, 229 F.2d 749, 753 (7th Cir.1956).

■ Nonetheless, whether the new counterclaim otherwise satisfies the Rule 13(a) requirements for a compulsory counterclaim bulks large in the exercise of the court's discretion. As 6 Wright & Miller, *Federal Practice and Procedure: Civil* § 1428, at 150 (1971) says:

> Counterclaims that are closely related to the claims already before the court normally should be permitted if they are interposed at any time prior to the trial stage; unrelated claims, particularly if they are asserted relatively late in the proceedings, may be more properly left to an independent suit.

That, of course, is not the whole story—a court should also consider whether allowing the claim would be inconvenient or confusing because of the progress or nature of the case. *Aviation Materials, Inc. v. Pinney*, 65 F.R.D. 357, 358 (Okla.1975).

Because FDIC answered the complaints in these cases November 14, 1985 and did not acquire its asserted rights to D & O insurance coverage until June 6, 1986,[8] its claims qualify as Rule 13(e) counterclaims acquired after pleading—not as compulsory counterclaims.[9] All the same, this opinion will (as the case law teaches) examine the claims in compulsory counterclaim terms, as a matter of discretion rather than of FDIC's right.

■ Compulsory counterclaims arise "out of the transaction or occurrence that is the subject matter of the opposing party's claim." Courts interpret that requirement broadly to prevent multiple lawsuits on claims that are factually similar. See *Warshawsky & Co. v. Arcata National Corp.*, 552 F.2d 1257, 1261 (7th Cir.1977).

■ Harbor, Allstate and National Union ask declaratory relief to avoid liability under the D & O policies, and Count VII of each Complaint attacks the very settlement

---

**8.** FDIC's motion mistakenly gives June 6, *1985* as the date of assignment.

**9.** FDIC persistently argues its claims are in fact compulsory under Rule 13(a), just as persistently ignoring the explicit opening language of Rule 13(a) to the contrary.

agreement on which FDIC proposes to ground its Counterclaim. Those claims and FDIC's Counterclaim really mirror each other. Indeed, it would be hard to imagine any counterclaim more closely related legally and factually to the main claims.

No meaningful confusion or inconvenience will be engendered by insertion of FDIC's Counterclaim. There will be no need to reinvent the wheel either via discovery or in any other respect. Leave to file is granted.

### Joinder of Excess Insurers

Rule 13(h) would allow FDIC to join CNA and First State as counterclaim defendants if such joinder satisfies the requirements of Rule 20.[10] Under Rule 20(a):

> All persons ... may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.

That language (as signaled by the use of "may" rather than "shall") does not mandate joinder in all events—other considerations may bear on the decision. As this Court said in *Alkot Industries, Inc. v. Takara Co.,* 106 F.R.D. 373, 377 (N.D.Ill.1985) (citation omitted):

> Rule 20(a) gives wide leeway for district court discretion in the shaping of a lawsuit by the addition of new parties.

Thus if joinder would create considerable delay, prejudice or expense for CNA, First State or other parties, this Court can deny FDIC's motion. *Naxon Telesign Corp. v.*

*GTE Information Systems, Inc.,* 89 F.R.D. 333, 339 (N.D.Ill.1980). As this Court observed when CNA and First State sought unsuccessfully to intervene in these cases, 110 F.R.D. 608, 612 (N.D.Ill.1986):

> These lawsuits are already complex and bid fair to become unmanageable. Addition of new litigants and new counsel tends to increase the difficulties geometrically rather than arithmetically.

That statement was made in the context of a motion to intervene as of right. It applies with even greater force on the present motion for permissive joinder, with nearly five months of added discovery activity under the belts of the existing adversaries. FDIC surely faces a heavy burden in attempting to join additional parties in spite of the earlier admonition.

True enough, the FDIC motion satisfies Rule 20(a)'s initial requirement. Its claim against CNA and First State involves the same series of transactions as does its Counterclaim against Harbor, Allstate and National Union.[11] All terms and conditions of the CNA and First State "following forms" of D & O policies are identical to those of Harbor's primary policy (110 F.R.D. at 609). Whether or not CNA and First State took independent positions as to the settlement between FDIC and Continental's former officers and directors, the overwhelming majority of factual and legal questions are common to FDIC's claims against all the D & O insurers. To paraphrase *Naxon,* 89 F.R.D. at 339 (citation omitted):

> [W]eighing in favor of the proposed [joinder] is the fact that it would facilitate consideration of [FDIC's] recovery, if its claims are meritorious, in a single proceeding.

**10.** FDIC also mentions (in a footnote) joinder under Rule 19 because CNA's and First State's presence is "necessary" for FDIC to collect the entire amount of its settlement. Again FDIC attempts to avoid legal analysis by using buzz words. Rule 19, in a deliberate departure from the old concepts of joinder, does not contain the word "necessary" at all. Instead the first requirement of Rule 19(a) speaks of persons whose absence means "complete relief cannot be accorded among those already parties." CNA and First State's absence would not pre-

vent this Court from giving complete relief among the present parties to this action.

**11.** Despite its earlier effort to intervene, CNA now opposes joinder. FDIC may be right in labeling that switch curious (see another earlier opinion in these cases, 110 F.R.D. at 613 n. 3, for another instance of expedient inconsistency), but the fact remains it would simply be unfair to bring CNA and First State into this case against their will at this comparatively advanced stage of a massive discovery process.

All that, however, is entirely overborne by the major added problems that would be engendered by the insertion of additional parties now. Serious prejudice would be caused not only to CNA and First State but to present parties litigant. Nearly five months ago this Court said the then-current Rule 26(f) submissions by the present parties litigant (110 F.R.D. at 610):

> demonstrate graphically the procedural problems created by the substantial amount of discovery that has already taken place here or is being adopted from the related underlying securities lawsuits pending before two other judges of this District Court. Those problems, rendered difficult enough by the fact Harbor, Allstate and National Union were not originally parties to those related cases, would be multiplied by First State's and CNA's late entry into the fray here.

Supplemental Rule 26(f) submissions by the parties since that time reinforce that analysis. All the discovery to date is not binding or limiting on CNA and First State, which would have the right to replow the same fields. Nor does CNA's attendance as an observer at some of those depositions change matters. *See Connell v. Bernstein-Macauley, Inc.*, 67 F.R.D. 111, 116–17 (S.D.N.Y.1975).

At the November 6 status hearing in these actions, this Court set August 31, 1987 as the firm date for close of discovery. That timetable, though it would be expansive in most actions of ordinary scope, is not in these cases (indeed Harbor, Allstate and National Union had asked for two more *years* of discovery). It would be nigh onto impossible for CNA and First State, starting now, to bring themselves up to speed and at the same time stay current in future discovery. And even if they could do so (thus avoiding delays that would prejudice the present parties), the price would be substantial additional expense for those present parties, as well as an undue burden on CNA and First State.

Indeed, the joinder of CNA and First State would operate in domino fashion.

FDIC concedes those new parties would file additional claims against the present parties, further complicating these lawsuits and creating the risk of even more delay and discovery. Massive lawsuits demand reasonable case management, and the infusion of new parties now would destroy any ability to adhere to the present reasonable timetable.

### Conclusion

Because FDIC's Counterclaim is so closely related to existing issues in these actions, its motion to file its Counterclaim as a supplemental pleading is granted. FDIC's motion to join CNA and First State as additional defendants to FDIC's Counterclaim, however, is denied. Because this order requires the tendered Counterclaim to be rewritten, FDIC may file it on or before November 24, 1986. Harbor, Allstate and National Union are ordered to answer FDIC's Counterclaim on or before December 9, 1986.