**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Plaintiff,**

v.

**CONTINENTAL ILLINOIS CORPORATION, et al., Defendants.**

**HARBOR INSURANCE COMPANY and Allstate Insurance Company, Plaintiffs,**

v.

**CONTINENTAL ILLINOIS CORPORATION, et al., Defendants.**

Nos. 85 C 7080, 85 C 7081.

United States District Court, N.D. Illinois, E.D.

May 22, 1987.

---

See also, 116 F.R.D. 78.

James G. Hiering, Dennis C. Waldon, Jeffrey I. Berkowitz, A. Benjamin Goldgar, Keck, Mahin & Cate, Chicago, for plaintiffs.

Thomas D. Allen, Ruth E. Vandemark, Kathy P. Saxton, Wildman, Harrold, Allen & Dixon, Chicago, Daniel F. Kolb, Jerome G. Snider, Davis, Polk & Wardwell, Washington, D.C., for defendants.

## MEMORANDUM ORDER

SHADUR, District Judge.

Harbor Insurance Company ("Harbor"), Allstate Insurance Company ("Allstate") and National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") (collectively "Insurers") initially sued Continental Illinois Corporation ("CIC"), its subsidiary Continental Illinois National Bank and Trust Company of Chicago ("Bank")[1] and a host of other defendants, seeking to avoid liability under the directors' and officers' ("D & O") liability policies (the "Policies") Insurers had issued to CIC.[2] After the Eleventh Opinion, 113 F.R.D. 527 (1986) allowed Federal Deposit Insurance Corporation ("FDIC") to file an $88 million counterclaim against Insurers, they brought a third-party complaint under Fed.R.Civ.P. ("Rule") 14(b) against Ernst &

---

**1.** CIC and Bank are collectively called "Continental."

**2.** Because this Court has typically begun all its opinions in these cases with the same opening description, some means of early differentiation is useful. Solely for that purpose, it is noted

this is this Court's twenty-second written opinion since the cases were assigned to its calendar after a series of recusals by other judges of this District Court. For the same ease in reference, earlier opinions will also be cited by number.

Whinney, Continental's independent accountants and auditors.[3]

Now Ernst & Whinney has moved to dismiss Insurers' third-party complaint because it fails to comply with Rule 14(b). For the reasons stated in this memorandum opinion and order, its motion is granted.

### FDIC's Counterclaim and Insurers' Defenses

FDIC's Counterclaim is summarized in the Eleventh Opinion, 113 F.R.D. at 529:

FDIC's Counterclaim seeks to enforce rights to D & O policy coverage pursuant to a June 6, 1986 assignment from Continental's former officers and directors who had been defendants in the underlying securities litigation, *FDIC v. Anderson*, 82 C 4712 (N.D.Ill.). That assignment, resulting from settlement of that action by FDIC and the individual defendants, is for $88 million (unless this Court holds only a lesser amount reasonable). Harbor, Allstate and National Union have already injected the settlement into this action by challenging its validity in Count VII of their respective complaints.

Because Insurers' claims and FDIC's Counterclaim thus mirrored each other, this Court found the latter satisfied the Rule 13(e) requirement that such an after-acquired counterclaim must arise "out of the same transaction or occurrence that is the subject matter of the opposing party's claim," 113 F.R.D. at 530–31. Not surprisingly, Insurers' alternative defenses to FDIC's Counterclaim pretty well track Insurers' original Complaints (in each instance the parenthetical reference lists the count in the Complaint first, followed by the numbered affirmative defense to FDIC's Counterclaim):

1. Continental's pre-issuance misrepresentations justify rescission of the Policies (Count I and First Affirmative Defense).

2. Under the policies, no coverage is provided for the types of claims made against the individual defendants (Count III and Second Affirmative Defense).

3. FDIC's claims against the individual defendants are not covered by the Policies (Counts IV and VI and Third and Fifth Affirmative Defenses).

4. Continental could not assign its claims against the individual defendants to FDIC (Count V and Fourth Affirmative Defense).

5. Continental and the individual defendants breached their contractual duties under the Policies by negotiating collusive and unreasonable settlements in the underlying securities litigation (Count VII [as recently amended, see the Eighteenth Opinion, slip op. (Apr. 24, 1987)] and Sixth Affirmative Defense).

### Insurers' Third-Party Complaint

In addition to asserting those defenses to FDIC's Counterclaim, Insurers now seek to hedge their bets by adding a claim against Ernst & Whinney for whatever amounts they may have to pay on that Counterclaim. Their third-party complaint has two counts:

1. Count I says Ernst & Whinney fraudulently certified Continental's 1980, 1981, 1982 and 1983 financial statements as fairly representing Continental's financial condition at the close of those years.

2. Count II seeks to recover for the same conduct on a negligent misrepresentation theory.

Though Ernst & Whinney had moved to dismiss for a variety of reasons, this Court then asked Insurers and Ernst & Whinney to limit their memoranda on the dismissal motion to Ernst & Whinney's contention that the third-party complaint fails to satis-

---

**3.** Ernst & Whinney must have a strong sense of deja vu. It was originally joined as a defendant and made the primary target of Count IX of Insurers' Complaints. It was then dismissed out by the Tenth Opinion, 646 F.Supp. 746 (1986), because there was no Article III case or controversy between it and Insurers. Meanwhile it is right now in the midst of a protracted trial before this Court's colleague, Chief Judge John Grady, in an action brought against it by FDIC and a plaintiff class of Continental shareholders.

fy the requirements of Rule 14(b).[4] While this Court was reviewing the cases cited and arguments made by both parties, its attention was drawn to another problem with Insurers' third-party claim. That problem is one exposed by the Rule 14 analysis and is derived from related principles, but it is far more fundamental: It involves the lack of subject matter jurisdiction over the third-party claim. Lack of jurisdiction, of course, is an issue this Court can and must raise on its own—one this opinion will now proceed to address.[5]

### Rule 14(a) and Ancillary Jurisdiction

Because Insurers and Ernst & Whinney are not diverse [6] and because Insurers' claim is based entirely on state law, any potential jurisdiction over their third-party claim must rely on ancillary jurisdiction. As this Court explained in *May's Family Centers, Inc. v. Goodman's, Inc.,* 104 F.R.D. 112, 115 (N.D.Ill.1985):

> While impleader is usually permitted when those [Rule 14(a)] conditions are met, Rule 14(a) does not define this Court's jurisdiction. Rule 82 makes plain the Rules "shall not be construed to extend or limit the jurisdiction of the United States district courts or the venue of actions therein." Accordingly, where as here there is no independent basis for federal jurisdiction over the third-party claim, this Court must determine whether its ancillary jurisdiction embraces the claim. That entails an inquiry whether the third-party claim (1) arises from the

same "nucleus of operative fact" (*United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966)) as the principal claim and (2) "depends at least in part upon the resolution of the primary lawsuit." *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 376, 98 S.Ct. 2396, 2404, 57 L.Ed.2d 274 (1978). It is not enough "that the exercise of ancillary jurisdiction over nonfederal claims has often been upheld in situations involving impleader," id. at 375, 98 S.Ct. at 2403.

Insurers' third-party claim surely fails the first part, and may well fail the second part, of that inquiry.[7]

### Nucleus of Operative Fact

To make the first inquiry, this Court must determine what already-existing claim or claims create the relevant "nucleus of operative fact." Insurers insist their claim against Ernst & Whinney (Insurers at 11):

> is the outgrowth of the same aggregate or core of facts which are determinative of the FDIC's counterclaim.

In plain English that means FDIC's Counterclaim and Insurers' defenses to that Counterclaim are based on essentially the same facts as Insurers' third-party claim.

■ Certainly it is not always permissible to look to the facts raised by defenses to a claim, as well as to the facts of the claim itself, to derive the "nucleus of operative fact." That could allow a defendant

---

**4.** See this Court's February 10, 1986 Memorandum Order. Rule 14(b) gives a plaintiff who is the target of a counterclaim the same rights as a defendant under Rule 14(a), which provides:

> At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him.

Because the operative standards are stated in (and the case law has been developed under) Rule 14(a), this opinion will regularly refer to that provision—even though Insurers literally (and properly) seek to invoke Rule 14(b).

**5.** Because Insurers fail on jurisdictional grounds, this Court need not deal with the numerous objections posed by Ernst & Whinney.

At first reading, however, Insurers would appear to have various substantive problems, as well as the jurisdictional one, with their claim.

**6.** Insurers make no allegations as to the citizenship of Ernst & Whinney's myriad partners (and for diversity purposes, *every* member of Ernst & Whinney must be of different citizenship from the suing Insurers, *Elston Investment, Ltd. v. David Altman Leasing Corp.,* 731 F.2d 436, 437–39 (7th Cir.1984)). That alone is enough to defeat diversity jurisdiction.

**7.** In this situation the standards under Rule 14(a) and those for ancillary jurisdiction are actually quite similar. Rule 14(a) requires both factual similarity and derivative liability. *Majors v. American National Bank of Huntsville,* 426 F.2d 566, 568 (5th Cir.1970).

to bootstrap otherwise unrelated issues into the case, with those issues in turn serving as a springboard for injecting otherwise unrelated third-party claims. Thus where a party defending against a claim raises many factual issues not posed by the claim itself (and that aptly describes the relationship between Insurers' affirmative defenses and FDIC's Counterclaim), the court must confront a definitional problem: the scope of the "operative facts" whose "nucleus" must then be identified.

Fortunately that exercise in mental gymnastics need not be indulged here. Insurers' defenses to FDIC's Counterclaim are virtually identical to Insurers' initial claims in these actions, and the FDIC Counterclaim arises from the same transaction that forms the basis of those initial claims. It would therefore be unrealistic to restrict the relevant core of operative fact to FDIC's Counterclaim itself. All the factual issues raised by Insurers' initial claims (and thus by their defenses to FDIC's Counterclaim) will have to be resolved here. That makes it appropriate to define the relevant "nucleus of operative fact" broadly to include the factual issues raised not only by FDIC's Counterclaim but by Insurers' initial claims, reasserted as defenses to the Counterclaim.[8]

But that broad definition gets only the camel's nose into the tent. Unfortunately for Insurers' current effort, the camel itself (Insurers' third-party suit against Ernst & Whinney) remains outside, because it has so little in common with Insurers' initial claims and FDIC's counterclaim.

■ To recover for fraud by Ernst & Whinney under Illinois law, Insurers will have to prove (*Teamsters Local 282 Pension Trust Fund v. Angelos*, 649 F.Supp. 1242, 1245–46 (N.D.Ill.1986) (citations omitted)):

(1) false statement of material fact (2) known or believed to be false by [Ernst & Whinney]; (3) intent to induce [Insurers] to act; (4) action by [Insurers] in reliance on the truth of the statement; and (5) damage to [Insurers] resulting from such reliance.... Furthermore, the reliance by [Insurers] must be justified, i.e., [Insurers] must have had a right to rely.

Insurers' alternative negligent misrepresentation theory would require proof that Ernst & Whinney (1) was negligent, rather than possessed of fraudulent intent, and (2) is in the business of providing such information for the guidance of others in business transactions (see the Seventeenth Opinion, 654 F.Supp. 316, 318 (1987)).

Although Ernst & Whinney's issuance of its opinion on Continental's 1980 financial statements (one of the allegedly fraudulent acts)[9] is related to Insurers' initial claim for rescission, the facts necessary to prove the two claims are far from "common." At best, only two of the elements of Insurers' fraud claim against Ernst & Whinney raise factual issues that are common to Insurers' claim for rescission:

1. the falsity of Ernst & Whinney's opinion as to the 1980 financial statements and

2. Insurers' reliance on that opinion in issuing the policies.

Ernst & Whinney's fraudulent intent or negligence in rendering its opinions—in each instance the key element for one of the third-party counts—involves factual issues totally extraneous to Insurers' initial claims and FDIC's Counterclaim.

Ernst & Whinney's other alleged misconduct—its issuance of opinions on Continental's 1981, 1982 and 1983 financial statements—is even farther removed from the facts underlying Insurers' rescission claim, any of Insurers' other claims or FDIC's Counterclaim. Insurers cannot change that by the wholesale insertion into their third-party complaint of allegations drawn

---

**8.** Because the facts relevant to Insurers' initial claims and to their defenses to FDIC's Counterclaim are virtually identical, the remaining discussion will refer only to the initial claims.

**9.** Insurers' Third-Party Complaint follows the colloquial terms "certified" and "certification"

to describe the accountants' opinion. Because those less precise terms inaccurately suggest that the accountants guaranteed the accuracy of the financial statements prepared by management, it is better to stay with the technically correct "opinion" usage.

from their current complaints in these actions. All too many of those allegations are really irrelevant to Insurers' third-party claim against Ernst & Whinney.[10]

FDIC's Counterclaim does involve one factual issue clearly relevant to the third-party complaint: the amount FDIC may be held entitled to under that counterclaim. By definition that would become the same amount Insurers would seek as damages under their third-party claim. But just as clearly the more basic issues are not common to FDIC's Counterclaim and the third-party complaint. On the one side, FDIC's Counterclaim is not at all dependent (as already explained) on whether Ernst & Whinney's opinions were tortiously issued, nor does it rest on whether the damages were caused by Insurers' reliance on those opinions. And on the other side, for example, such issues as the coverage provided by the Policies and the validity of the settlement agreements are not at all relevant to the question of Ernst & Whinney's alleged misrepresentations.

In sum, Insurers' third-party claim has only limited facts in common with Insurers' initial claims and FDIC's Counterclaim. Those facts represent no more than a single scene in the parties' two-act play, and in jurisdictional terms one such scene cannot justify adding an entire third act to an already lengthy and elaborate production.

### Logical Dependence

■ Even if Insurers' initial claims and FDIC's Counterclaim had shared a sufficiently common factual basis with Insurers' third-party claim, that would not be enough. *Owen Equipment*, 437 U.S. at 376, 98 S.Ct. at 2403–04 teaches Insurers' third-party claim must also be logically dependent on the resolution of the other

claims. It is at least questionable whether Insurers have satisfied that requirement either.[11]

Insurers argue FDIC's Counterclaim is a "but for" cause of their third-party claim. Insurers Mem. 6 says, speaking of this Court's opinion in *May's Family Centers*, 104 F.R.D. at 115:

> As in that case, the claim against E & W here is logically dependent upon the disposition of the FDIC's counterclaim, because the non-liability of plaintiffs to the FDIC would result in E & W's non-liability to plaintiffs for the amounts sought.[12]

But a "but for" relationship of that kind is merely a necessary, not a sufficient, condition of the logical-dependence concept. As *Old Republic Insurance Co. v. Concast, Inc.*, 99 F.R.D. 566, 569 (S.D.N.Y. 1983) put it in the Rule 14(a) context:

> An independent and separate claim cannot be brought against a third-party simply because a "but for" relationship is alleged. Here, however, the third-party claim is not independent of the main action. What [the third-party defendant] did nor did not do is crucial in both cases.

Here what Ernst & Whinney "did or did not do" (that is, whether its acknowledged rendition of accountants' opinions was or was not *tortious*, not whether the financial statements themselves were accurate) is indeed "crucial" to the proposed third-party claim, but it is not at all "crucial" to FDIC's Counterclaim against Insurers (or to Insurers' defenses to that Counterclaim). That same kind of approach to the problem in the related Rule 14(a) matrix is exemplified by such other cases as *Southeast Mortgage Co. v. Mullins*, 514 F.2d 747, 750 (5th Cir.1975) and *Majors*, 426 F.2d at 568–69.

---

**10.** Ernst & Whinney are mentioned in only 10 of the first 142 paragraphs of the third-party complaint—fully 66 typewritten pages of allegations lifted en masse from Insurers' proposed amended complaints.

**11.** See Appendix.

**12.** That statement by Insurers, with its cramped view of the "but for" approach, is really a non sequitur. It is true that Insurers' nonliability to

FDIC would result in Ernst & Whinney's nonliability to Insurers for the *amounts* Insurers had sought from FDIC, but that is very different from saying Insurers' *claim*—its cause of action—against Ernst & Whinney is dependent on the result of FDIC's action against Insurers. On the contrary, Insurers' claim against Ernst & Whinney exists independently of that result (see Appendix).

Thus Insurers would at best have difficulty in meeting the second condition for this Court's acceptance of ancillary jurisdiction over their third-party complaint. For purposes of this opinion, however, there is no need to go beyond identifying that difficulty—for Insurers' failure to satisfy the first condition is fatal in jurisdictional terms.

### Conclusion

This Court's ancillary jurisdiction in these cases does not encompass Insurers' third-party claim against Ernst & Whinney. That claim is not based on the same nucleus of operative fact as the other claims in these actions.[13] Insurers' third-party complaint is dismissed for want of subject matter jurisdiction.

### Appendix

*Owen Equipment*, 437 U.S. at 376, 98 S.Ct. at 2403–04 (footnote and citation omitted) contrasted the unusual situation before the Court there with the usual ancillary jurisdiction situation:

> Second, the nonfederal claim here was asserted by the plaintiff, who voluntarily chose to bring suit upon a state-law claim in a federal court. By contrast, ancillary jurisdiction typically involves claims by a defending party haled into court against his will, or by another person whose rights might be irretrievably lost unless he could assert them in an ongoing action in a federal court. A plaintiff cannot complain if ancillary jurisdiction does not encompass all of his possible claims in a case such as this one, since it is he who has chosen the federal rather than the state forum and must thus accept its limitations.

That contrast also cuts against Insurers—perhaps in more than one way.

Insurers have indeed "chosen the federal rather than the state forum." Many if not all of the case-or-controversy problems that have frustrated Insurers' efforts to make this a global controversy would not have inhibited comparable lawsuits brought by Insurers in the state court system.[1] In any case, Insurers can scarcely assert either that they have been "haled into court against [their] will" or that their "rights might be irretrievably lost unless [they] could assert them in an ongoing action in a federal court," as though those were factors somehow justifying this Court's assumption and exercise of ancillary jurisdiction. Neither of those quoted things is true.

Moreover, there is still another weakness in the sort of "but for" argument advanced by Insurers (a weakness suggested in n. 12 to this opinion). To be sure, a "but for" dependency exists in the limited sense that if FDIC fails in its Counterclaim against Insurers, Insurers will have no claim against Ernst & Whinney for any amount payable to FDIC. But that is very different from saying Insurers' entire claim against Ernst & Whinney is dependent on FDIC's Counterclaim against them—the real "but for" test.

True enough, some resulting injury (that is, actual damages) is an essential element of Insurers' putative claim against Ernst & Whinney. But after all, the success of FDIC's Counterclaim would represent only one of several sources of such injuries—of damages—to Insurers from Ernst & Whinney's alleged misconduct. As Third-Party Complaint ¶ 167 itself makes clear, Insurers say Ernst & Whinney's alleged misconduct has already caused (or promises to

---

**13.** As the last section of the text discussion reflects, Insurers might also fail on the second branch of the ancillary jurisdiction test: logical dependency. Because both standards must be met, that issue need not be resolved for dismissal of the third-party complaint. Nor is it necessary to decide the matter in Rule 14(a) terms as such, though the same common-nucleus-of-operative-fact principles that limit ancillary jurisdiction have been employed by most courts to inform their decisions under Rule 14(a).

**1.** It is of course true that FDIC (whose presence here is the *only* predicate for federal jurisdiction) might have removed such state court lawsuits under 12 U.S.C. § 1819 Fourth. But if it had done so, at this point this Court can do no better than speculate on whether the actions would or would not have been removed and, if so, on the appropriateness of any possible exercise or nonexercise of this Court's 28 U.S.C. § 1441(c) remand power after such removal.

cause) several other elements of damage to Insurers. It is plain that if Ernst & Whinney has indeed violated any obligations owed to Insurers by rendering false accountants' opinions on Continental's financial statements, that misconduct has damaged Insurers even if Insurers beat FDIC's claim.[2]

In short, FDIC's Counterclaim cannot fairly be characterized as a true "but for" cause of Insurers' claims against Ernst & Whinney for misrepresentation. That Counterclaim is no more than a "but for" cause of one source of injury from that alleged misconduct. In fact, any effort by Insurers to recover from Ernst & Whinney only the damages stemming from that source of injury (the FDIC Counterclaim) would appear to pose serious problems of splitting a cause of action—problems this Court need not resolve given the disposition of the current motion in the text. For the present it is enough to say Insurers are (at a minimum) in serious trouble on the logical-dependency test, in addition to their fatal failure to satisfy the common-nucleus-of-operative-fact test for ancillary jurisdiction.

**2.** Insurers' potential liability under the Policies is not limited to what FDIC now claims. Moreover, if FDIC were to lose on its Counterclaim, Insurers could still presumably seek to recover from Ernst & Whinney for the unquestionably massive attorneys' fees incurred by them in this litigation. Though this is not to be taken as an expression on the merits of such a claim, it is certainly the case that Insurers have sustained and will continue to sustain such "injuries" regardless of the outcome of FDIC's Counterclaim.